## STATE *vs.* WILLIAM FITZPATRICK.

A statute provided that " No person shall manufacture or sell, or suffer to be manufactured or sold, or keep or suffer to be kept on his premises or possessions or under his charge for the purpose of sale, any " intoxicating liquors. This statute differs from previous statutes in omitting the words " within this State " after the words " for the purpose of sale."

*Held,* that this statute did not apply to liquors kept by a person for his own use, not for sale.

*Held,* further, that it did not apply to liquors transporting through this State for sale in another state.

*Held,* further, that it did not apply to liquors simply stored in this State, though intended ultimately to be exported for sale.

*Held,* further, that the statute was within the limits allowed to state legislation by *The License Cases,* 5 How. U. S. 504.

*Held,* further, that the statute was not violative of the Constitution of the United States, article I. sect. 8.

CONSTITUTIONAL questions certified to the Supreme Court under Pub. Stat. R. I. cap. 220, §§ 1–9.

*January* 7, 1888. DURFEE, C. J. This case comes before us from the District Court of the tenth judicial district by certificate on a constitutional question. It is a complaint under Pub. Laws R. I. cap. 596, of May 27, 1886, and cap. 634, of May 4, 1887, against the defendant for keeping without lawful authority intoxicating liquors " for the purpose of sale," in violation of cap. 634, § 1, in amendment of cap. 596, § 1, charging the offence substantially in the language of the statute. In the District Court the defendant made the following motion, to wit:

" The defendant moves that the above entitled complaint be dismissed, because it is brought under section 1 of chapter 634 of the Public Statutes, which attempts to prohibit the keeping for the purpose of sale of any of the liquors enumerated in said section, without making any distinction as to whether the sale is to be within or without this State, and he claims that he has a right to keep the same for the purpose of sale without this State. Art. I. sect. 8, Constitution of the United States."

The District Court overruled the motion, and, having found the defendant guilty, has certified the question involved in it to this court for decision.

The first section of chapter 634, so far as it is necessary to recite it for the purposes of the question, is as follows, to wit:

" No person shall manufacture or sell, or suffer to be manufactured or sold, or keep or suffer to be kept on his premises or possessions or under his charge for the purpose of sale, any ale, wine, rum, or other strong or malt or intoxicating liquors, a part of which is ale, wine, rum, or other strong or malt or intoxicating liquors, unless as hereinafter provided."

The corresponding sections in earlier statutes, whether licensé or prohibitory, contained the words " within this state," after the words " for the purpose of sale," thus making the keeping illegal only when it was for the purpose of selling the forbidden liquors within the State. The defendant contends that, in consequence of the alteration, the keeping is prohibited if the liquors are kept in this State for the purpose of sale, even though they are intended to be sold out of the State, and that the section is therefore repug-

nant to section 8 of article I. of the Constitution of the United States, which confers upon Congress a variety of powers, and among them power " to regulate commerce with foreign nations and among the several States."

It will be well to determine the scope of the question before we proceed to consider and decide it. First, then, when is it that liquors which are in the possession of a person in this State are kept by him for the purpose of sale within the meaning of the statute ? They are clearly not so kept when they are kept by him for his own use without any intention of selling them. Suppose he has the liquors in the State in the act of transporting them through this to another State for the purpose of selling them in the latter, are they then being kept by him for the purpose of sale within the 'meaning of the statute ? We think not, for though in a general sense he keeps such liquors for the purpose of sale, it is not the purpose for which he is keeping them in this State, the purpose for which he keeps them here being not sale but transportation. If such a person were complained of for illegal keeping, the charge would be that in some particular town he did, without lawful authority, keep the liquors for the purpose of sale, and he could truly reply that he did not keep them in that town for that purpose, and was therefore not guilty. The same construction will hold if intoxicating liquors are kept in this State for storage simply, though they are intended to be ultimately carried elsewhere and sold. But if keeping in either of these ways is not prohibited, then the operation of section 1, in so far as it can interfere with commerce with foreign nations and among the States, is extremely limited. We do not say, however, that liquors may not be kept in this State for the purpose of sale in other States in such way that the keeping would violate section 1. For instance : If intoxicating liquors were kept in this State to be sold on orders received or procured in other States, or to customers coming from other States, we think the keeping would be within the prohibition, even though the sales were meant not to be completed in this State. In such a case the place of keeping would be the headquarters of the traffic, or at least the place *from* which, if not *at* which, the sales would be made. Making the sales would be the purpose for which the liquors

were kept *there*, and we think the General Assembly must be held to have intended that no such place should be tolerated in the State. But no other way occurs to us in which liquors not intended for sale in this State can be kept here so that the keeping would be within the prohibition of section 1. The question presented, then, is whether, because such keeping is prohibited, section 1 is in conflict with the Constitution of the United States.

It will be seen that the question assumes that the prohibition, if it be unconstitutional as it applies to intoxicating liquors kept in this State for sale elsewhere, is likewise unconstitutional as it applies to such liquors kept in this State for sale within it. This is not clear to us; *State* v. *Amery*, 12 R. I. 64; nor is it clear that the question can be properly raised by a mere motion to quash. *Mugler* v. *Kansas*, 123 U. S. 623. But passing these points, which have not been argued, we proceed to consider the question in the larger way in which it has been discussed.

We think it is well settled by the decisions of the Supreme Court of the United States that the several states have power to restrict, and even prohibit altogether, the sale of intoxicating liquors for use as a beverage within their borders, and consequently, of course, to prohibit the keeping of them for sale to the same extent. Cooley, Constit. Limit. *582, *583, and cases cited; *Mugler* v. *Kansas, supra.* The power to do this has been denominated a police power, a power not delegated to the general government, but remaining to the States to enable them to regulate, for their own welfare as they understand their welfare, their internal or domestic concerns. The power is signally exercised in legislation designed to promote popular education, to protect the public health and morals, to punish and prevent crime, to alleviate and prevent pauperism, and especially in legislation designed to prevent the demoralization and impoverishment that follow free traffic in intoxicating liquors by restraining or prohibiting it. The power was exhaustively discussed and considered in the Supreme Court of the United States in *The License Cases*, 5 How. U. S. 504, with particular reference to its exercise in legislation for the restraint of the liquor traffic; and while the justices did not fully agree in the reasons given by them for decision, they did agree in fully affirming the authority of the States

within their own borders. Chief Justice Taney and Justices Catron and Nelson rested their judgments distinctly on the ground that the power of the States to pass restrictive laws was complete, notwithstanding the laws might indirectly interfere with interstate commerce, so long as they did not conflict with any law of Congress ; and some of the other justices, enough to make a majority, concurred with them, though they preferred a still deeper and broader ground of state rights. If this doctrine of Chief Justice Taney and Justices Catron and Nelson be correct, and is still adhered to, the defendant's contention cannot prevail, for it is not pretended that there is any federal regulation of interstate commerce with which the provision complained of conflicts. But, not to put too much reliance on this view, we will proceed to the broader consideration.

There can be no doubt of the power of the states, under these decisions, to prohibit altogether the sale of intoxicating liquors within their borders, and yet it is evident that such a prohibition does obstruct the freedom and lessen the extent of commerce among the states. For example : A manufacturer of intoxicating liquors in another state could not send the product of his manufactory to a prohibitory state and sell it there. He could not even receive orders for his liquors from such a state and fill them, if a delivery in such state were necessary to satisfy the orders. Nor could a person living in another state go into such a state and purchase intoxicating liquors there to carry or send elsewhere, though it might be very advantageous for him to do so. In *The License Cases*, 5 How. U. S. 504, a law of New Hampshire, under which a sale in that State of gin imported from Boston was made punishable, was held not to be void for interfering with the power of Congress to regulate commerce among the states, though the gin was sold in the cask in which it was imported. In the same case, in reply to the argument that the restrictive legislation tended to lessen importation, Mr. Justice McLean said that " a law of a state is not rendered unconstitutional by an incidental reduction of importation, and especially not when the state regulation has a salutary tendency on society and is founded on the highest moral considerations." And he further remarked : " When, in the appropriate exercise of these federal and state powers con-

tingently and incidentally, their lines of action run into each other, if the state power be necessary to the preservation of the morals or safety of the community, it must be maintained." The doctrine of the justices who took the broader view was, that a state law passed in good faith for the suppression of the traffic is not to be condemned as unconstitutional because it may incidentally hamper the freedom or lessen the extent of interstate commerce. And see *State* v. *Peckham*, 3 R. I. 289. The question is whether this State has transcended the power thus conceded to it.

In considering this question we will first refer to a matter before adverted to, namely, that the quantity of intoxicating liquors kept in this State solely for the purpose of selling them elsewhere must be very small. For what is there to induce a person having liquors to sell in other states to keep them in this State for that purpose ? Some such persons there may have been when the law first enacted under the prohibitory amendment went into effect ; but that law did not prohibit the keeping for sale out of the State, and there was ample time to dispose of liquors so kept before the present law was passed. There might be such persons if the manufacturing of intoxicating liquors were permitted, but manufacturing is prohibited equally with selling. In its practical operation, therefore, the enactment can have but little effect on interstate commerce.

In the second place we remark that the more unlimited the prohibition is, the more effective it is likely to be ; for if it were lawful to keep intoxicating liquors in this State for sale elsewhere, it would be easy for persons to take advantage of the lawfulness, and, while pretending to keep liquors for sale elsewhere, to keep them for sale in this State. The state borders would be eminently favorable to such evasions of the law. It is surely competent for the State to guard against them by laws enacted for that purpose. We do not see how a law which forbids the keeping of intoxicating liquors in one state for sale in another interferes with interstate commerce any more than a law which forbids the sale in one state of such liquors imported from another. And yet, as we have seen, a law of the latter description has been held by the Supreme Court of the United States to be a proper exercise of police power. And see *Pearson* v. *International Distillery*, 34 Northwestern Reporter, 1.

We see no reason to doubt that our law was passed in good faith to carry out the prohibitory amendment, or to suppose that, if it interferes with foreign or interstate commerce, the interference is other than incidental. It is our duty to uphold it as constitutional until we are satisfied that it is unconstitutional. We are not so satisfied. We send the case back to the District Court for sentence.                                    *Order accordingly.*

*Clarence A. Aldrich,* Assistant Attorney General, for plaintiff.

*Hugh J. Carroll & Thomas J. McParlin,* for defendant.