## STATE *v.* LANCASHIRE FIRE INSURANCE COMPANY.

Opinion delivered May 27, 1899.

1.—STATUTES—CONSTRUCTION.—In construing statutes courts attach but little weight to expressions of individual members of the legislature, or to the fact that certain amendments have been rejected, for the reason that, whatever the legislature may have intended, such intention can have no effect unless expressed in the statute. (Page 471.)

2. SAME—EXTRA-TERRITORIAL EFFECT.—The legislature is presumed to intend that its statutes shall not apply to acts or contracts done or effected beyond the limits of the state, and having no reference to or effect upon persons or property in this state. (Page 472.)

3. STATUTES—CONSTRUCTION.—The courts will not construe an act to be unconstitutional, in whole or in part, if it can be reasonably construed to take effect in all its parts. (Page 476.)

4. ANTI-TRUST ACT—CONSTRUCTION.—The "anti-trust act," which provides that "any corporation organized under the laws of this or any other state, or country, and transacting or conducting any kind of business in this state, or any partnership or individual, * * * who shall create, enter into, become a member of or a party to any pool, trust,

agreement, combination, confederation or understanding * * * to fix or limit * * * the price or premium to be paid for insuring property against loss or damage by fire * * * shall be deemed and adjudged guilty of a conspiracy to defraud," etc., (Acts 1899, p. 50) does not apply to pools or combinations formed outside of this state, and not intended to affect, and which do not affect, persons or property or prices of insurance in this state. . (Page 477.)

Appeal from Pulaski Circuit Court.

JOSEPH W. MARTIN, Judge.

. STATEMENT BY THE COURT.

The attorney general of the state filed a complaint against the defendant Lancashire Insurance Co., alleging that it was a foreign corporation organized under the laws of England; that it was, on and after March 6, 1899, engaged in the business of insuring property in this state against loss or damage by fire, and that, while so engaged, it became and was a member of a pool or combination with other corporations engaged in a similar business to regulate or fix the price or premium to be paid for insuring property against loss or damage by fire. Wherefore he asks judgment against said company for the sum of five thousand dollars.

The defendant company filed its answer, admitting that it was engaged in the business of insuring property against loss or damage by fire as alleged in the complaint, but denied that, while so engaged in business of insuring property in this state, it became or was a member of any pool or combination, either in this state or elsewhere, for the purpose of fixing or regulating the price or premium to be paid for insuring property in this state against loss or damage by fire, etc.

The state by her attorney filed a demurrer to this answer, on the ground that it did not state facts sufficient to constitute a valid defense. The circuit court overruled the demurrer, and, the state electing to stand on its demurrer, final judgment was entered against it, from which judgment the state appealed.

*Jeff Davis*, Attorney General, and *Chas. Jacobson*, for appellant; *Jesse C. Hart* and *Hal L. Norwood*, of counsel.

The state has power to annex any conditions it sees fit to the permission it gives to foreign insurance companies to do

business in the state. 8 Wall. 168; 18 How. 404; 13 Pet. 519; 94 U. S. 535. The agreement in this case constitutes a "*trust*," within the meaning of the act. The court will take judicial knowledge of the records and journals of the legislature, in so far as they throw light upon the intention of the lawmakers. 5. Ark. 613; 57 Fed. 429; 58 Fed. 768; 23 Wall. 307: 70 Ind. 332, 338; 23 Enc. Law, 335; 91 U. S. 79; 107 Ind. 348; 112 Ind. 75; 87 Ala. 225; 33 Ct. Cl. 135; 33 Ct. Cl. 36. The word "*any*" as used in the act is to be given its plain and usual meaning, and not restricted to trusts, etc., in this state. 133 N. Y. 332; 112 Pa. St. 620; 166 U. S. 290, 312, 320, 325. An act which, though committed in another state, takes effect in Arkansas, is punishable here, if contrary to our law. Clark's Cr. Law, 360, 364, 366. 49 Am. Dec. 474; 53 Ark. 386. This statute is an exercise of the state's police power. As to extent of this power, see 123 U. S. 623; 161 U. S. 677. The legislature prescribes the bounds of public policy, and rules may be prescribed by it looking to the supervision of whatever in business is contrary to such public policy. Beach, Monopolies & Ind. Trusts, § 13; 94 U.S. 124; 5 How. 583; 129 U. S. 29; 104 N. C. 710; 7 Cush. 84; 27 Vt. 140; Cooley, Const. Lim. pp. 707–720; 165 U. S. 16; 113 U. S. 109; 137 U. S. 89; 163 U. S. 304; 127 U. S. 634; 157 U. S. 160–165; 169 U. S. 391–393; 1 Thayer's Cas. Const. Law, 453. Insurance business may be so regulated. Cooley, Const. Lim. 743, 744; 42 Conn. 583; 97 Ill. 593; Tied. Police Power, 281; 10 Wall. 410; *ib*. 566; 15 Kas. 628; The policy of all this state's legislation, prior to the act of March 6, 1899, has been to encourage and protect foreign insurance companies. The construction given the latter act by the appellant would effectually repeal all such prior enactments. Repeals by implication are not favored. 11 Ark. 94–103; *ib*. 481–496; 28 Ark. 317–325; 29 Ark. 225–237; 34 Ark. 499; 48 Ark. 159; 56 Ark. 45–47; 41 Ark. 149; 45 Ark. 90–92. The title of the act may properly be considered in construing it. Black, Int. Stat. 174; 144 U. S. 550–563; End. Int. Stat. §§ 62, 65; 143 U. S. 447–462. Penal laws have no extra-territorial effect. Cooley, Const. Lim. 128; End. Int. Stat. §§ 167–171; Bish. Writ. Law, § 141; Story, Conf. Laws, §§ 18–

20; 37; Fed. 497. An unconstitutional meaning must not be given to a law, if it be susceptible of any other construction. End. Int. Stat. § 178; 112 U. S. 269; 12 Pet. 76; Black, Int. Law, 91; 7 Cranch, 350. The same language in the act makes *persons* and *corporations* guilty of an offense. If the word "any" be construed to have extra-territorial effect as to *persons*, the act is unconstitutional. 18 L. R. A. 628; 50 Kas. 609; 25 L. R. A. 243; 47 Tex. 381; 25 L. R. A. 250. The rule of strict construction of penal statutes does not require that the narrowest construction be given to plain words. 6 Wall. 395; 92 U. S. 244; 31 Fed. 800; 14 Pet. 474–475; 32 Fed. 726; 42 Fed. 891; 13 Johns. 49; 118 Mo. 380. Nor does it prevent the court from applying other rules of statutory construction. 163 Ill. 56. The question before the court is the provision in the statute against certain acts of corporations; and the constitutionality of the act, so far as concerns individuals, is not in the case. 58 Ark. 407; 12 So. 690. Unconstitutional parts of a statute may be rejected. 71 N. W. 941; 14 So. 50.

*Rose, Hemingway & Rose, Blackwood & Williams, Cockrill & Cockrill, J. M. Moore, Dodge & Johnson, Carroll & Pemberton,* and *Morris M. Cohn,* for appellee.

That construction is to be given to an act which will render effectual and constitutional every word or part of it, if possible. 15 Ark. 555; 17 Ark. 608, 652; Bish. Writ. Laws, 5, 82; 56 Ark. 495; 22 Ark. 369; 112 U. S. 269; 12 Pet. 76; 3 Pet. 448; Cooley, Const. Lim. 220. The word "any," as applied to corporations and to persons, must be given the same meaning. Endl. Int. Stat. §§ 23, 265; Suth. Stat. Const. §§ 239, 82; Black, Int. Laws, 60–98; Potter's Dwarris, 188; 11 Ark. 44. The terms of the act are clearly those of a criminal act. 116 U. S. 616, 634; 150 U. S. 476–480; 37 Fed. 497. The word "any" in this act must be construed just as it is in any other criminal act—*i. e.,* to refer to crimes in this state, because this was the underlying purpose of the law. Endl. Int. Stat. §§ 44, 114, 118, 121, 125, 170, 172, 173, 174. Penal acts are to be strictly construed, and can not be extended by implication. 6 Ark. 134; 43 Ark. 415; 53 Ark. 336;

64 Ark. 271; 2 Elliott, Railroads, § 710; 6 Wall. 385; 87 N. C. 255; 23 Am. & Eng. R. Cas. 654; 56 Ark. 45; 51 Ark. 309–315; 65 Ark. 183; 59 Ark. 344–356; 47 Ark. 442; 41 Ark. 517; 52 Pac. 789; 18 Wall. 409. The law should have no construction which will give it an extra-territorial operation. 162 U. S. 197; Story, Conf. Laws, §§ 18–20; Black, Int. Laws, 91; End. Stat. Con. §§ 169, 170, 335; Bish. Stat. Cr. § 141; 4 H. L. Cas. 946, 955; 4 Kay & J. 367; 3 H. L. Cas. 100; 12 Ch. Div. 522; 3 Starkie, 158; 2 Bing. N. C. 722; 4 M. & Gr. 335; 2 Rose, 311; 3 Mo. Pl. Crown, 133; 3 .Wheat. 610; 7 Cranch, 350; 10 Oh. St. 587; 10 So. 86; 1 Park. Cr. Rep. 645; 1 Bish. M. & D. §§ 353, 657; 2 Nelson, M. & D. 568; 86 N. Y. 18; 113 Mass. 458; 2 Park. Cr. Rep. 195; 61 Ark. 329, 338; 60 Ark. 269. The act is a criminal one, and hence unconstitutional, because it attempts to impose a criminal liability without presentment or indictment by a grand jury. 116 U. S. 616, 634; *ib.* 436; 150 U. S. 476, 480; 37 Fed. 497.

RIDDICK, J., (after stating the facts.)    This is an action against a foreign insurance company in which the state, through her attorney general, claims a penalty of five thousand dollars. The question presented is whether a foreign corporation, doing a fire insurance business in this state, subjects itself to a penalty, under the recent statute against trusts and combinations, by entering into an agreement with other insurance companies for the purpose of fixing rates of insurance in foreign countries, when such agreement is neither made in this state, nor intended in any way to affect the prices or premiums to be paid for insuring property in this state.

As the legislature has the power to entirely exclude foreign insurance companies from doing business in this state, it can, of course, dictate the terms upon which such companies may do business here.    The whole matter rests in the discretion of the legislature.    *Paul* v. *Virginia*, 8 Wall. (U. S.) 168.    There is no controversy on this point, but the attorney general contends that no insurance company, while a member of a trust or combination to fix rates in any portion of the world, can do business here, without becoming liable to a penalty under our sta-

tute.  The defendant, on the other hand, denies that the language of the statute in question carries the meaning contended for by the attorney general, and the question before us has reference, not to the power of the legislature,—for that is conceded,—but to the proper construction and meaning of the statute.

The statute in question, so far as it affects this case, provides that "any corporation organized under the laws of this or any other state or country, and transacting or conducting any kind of business in this state, or any partnership or individual, * * * who shall create, enter into, become a member of or party to any pool, trust, agreement, combination, confederation or understanding * * * to fix or limit * * * the price or premium to be paid for insuring property against loss or damage by fire, * * * shall be deemed and adjudged guilty of a conspiracy to defraud, and be subject to the penalties as provided by this act."  Acts 1899, p. 50, § 1. Another section provides that any person or corporation violating any provisions of the act shall forfeit not less than $200 nor more than $5,000 for every such offense, and each day such corporation or person shall continue to do so shall be a separate offense.  *Id.* § 2.

Before proceeding to discuss the language of this statute, we will notice an argument on the part of the attorney-general to the effect that the intention of the legislature that this statute should have the broad meaning contended for by him is conclusively shown by the fact that, after he had placed such construction upon the statute, the legislature rejected a proposed amendment expressly limiting its effect to combinations formed to affect prices in this state.  This argument assumes that the only reason moving members of the legislature to oppose such amendment was that they agreed with the attorney general in his construction of the act, and desired the act to stand as he construed it.  But how can we know that this assumption is true?  While some members may have acted from that motive, is it not just as reasonable to suppose that others differed with him in his construction of the law, and voted against the amendment on the ground that it was unnecessary and a needless waste of time to pass an amendment in order to

make the law mean what they supposed it already meant? The settled rule, established by the highest authority, is that but little weight should be attached to expressions of individual members of the legislature, or to the fact that certain amendments were rejected. *Aldridge* v. *Williams*, 3 How (U. S.), 24, opinion by Chief Justice Taney; Black on Interpretation, 226. These matters are liable to be misunderstood. It is not always true that those members who speak are the most influential, or that those who speak express the views of those who do not speak, and we therefore have no means of knowing the reasons that influenced the legislature in voting down the amendment. To determine the meaning of a statute, the courts must look mainly to the language of the act itself; for that is the final expression of the legislative will, and therein must such will and intention be sought. Whatever the legislature may have intended, such intention can have no effect unless expressed in the statute; for this, being a penal statute, cannot be extended by implication. It would be in the highest degree unjust to punish conduct not clearly forbidden by the law itself. *Casey* v. *State*, 53 Ark. 336. And so, to quote the words of a recent opinion of the supreme court of the United States, "we are left to determine the meaning of this act, as we determine the meaning of other acts, from the language used therein." *United States* v. *Trans-Missouri Freight Assn.*, 166 U. S. 318.

The words of the statute to which counsel for state attach such a wide meaning are "any corporation," "any partnership or individual," "any pool, agreement, contract, combination." It will be noticed that these are general words. The statute nowhere expressly says that it was intended to have the wide extra-territorial effect which the construction of counsel for the state necessarily imputes to it. Now, in determining the meaning of this statute, we must keep in mind certain well-known rules of construction, based on reason, and so well settled that members of the legislature must be supposed to have been familiar with them, and to have had them in view in framing the law. One of these rules is that the legislature is presumed to intend that its statutes shall not apply to acts or contracts done or effected beyond the limits of the state and having no

reference to or effect upon persons or property in this state. As the legislature of each state assembles to legislate especially for the benefit of the people of that state, it is reasonable to suppose, when the statute does not expressly show to the contrary, that it was not designed to punish acts done or contracts made in foreign countries, and affecting only the people of such countries. For this reason, although the legislature may use general words, such as "any" or "all," in describing the persons or acts to which the statute applies, still it does not follow that the law has an extra-territorial effect; for it is presumed that the legislature did not intend it to have such effect unless the language of the statute admits of no other reasonable interpretation. *Bond* v. *Jay,* 7 Cranch (U. S), 350. The reports furnish numerous instances of the application of this rule, by which general words used in statutes are taken as limited to cases within the jurisdiction of the legislature passing the statute, and confining its operation to matters affecting persons and property in such jurisdiction. It will be necessary to notice only a few of such cases.

In the case of *United States* v. *Palmer,* 3 Wheat. 610, there was a prosecution under a statute which provided for the prosecution and punishment of "any person or persons" committing murder or robbery upon the high seas. Chief Justice Marshall, discussing in that case the question whether the act applied to all persons committing such crimes, or only to those owing allegiance to the United States or committing the offense against her citizens, said that no doubt congress had power to enact laws punishing pirates, although they may be foreigners, and may have committed no particular offense against the United States. He admitted that the words, "any person or persons," used in the statute, were broad enough to comprehend every human being, but he said that such general words must be limited in some degree, and he held that it was offenses against the United States, not offenses against the human race, that congress by the law intended to punish. "Every nation," he said "provides for such offenses the punishment its own policy may dictate, and no general words of a statute ought to be construed to embrace them when committed by foreigners against a foreign government."

So a learned English court, construing an act of parliament which abolished certain weights and measures, and enacted "that any contract, bargain or sale made by any such weights or measures shall be wholly null and void," held that the general words used in the law should be limited to contracts in which the goods bought or sold were to be weighed in that country, and that the statute, though the words used were as broad as those under consideration here, had no application to contracts, though made in England, when the goods were to be weighed in a foreign country. *Rosseter* v. *Cahlmann*, 8 Ex. 361.

If it were necessary, hundreds of cases and statutes could be referred to in which general words are thus limited. It is common for penal statutes to contain general words, such as "any" or "all," in order to cover all persons of the kind referred to in the state where the legislature assembles; but these general words must necessarily be treated as limited in some respects, otherwise innumerable conflicts between the laws of different states and countries would result, and unutterable confusion be brought into the law. Among the vast number of cases construing such statutes, it is doubtful if one can be found in which such general words have not been treated as limited to some extent, for it is unusual for a legislature to intend that its statutes shall apply over the whole world. For these reasons, we think the words, "any pool or combination," used in the statute here, must also be treated as limited, and we cannot adopt the broad construction contended for by the state's counsel.

The cases cited by the attorney general on this point do not, we think, support his construction of this statute. Take, for instance, the case of *Leonard* v. *Commonwealth*, 112 Pa. St. 620, cited by him, in which the court construed a section of the constitution of Pennsylvania which provided that "any person who shall, while a candidate for office, be guilty of bribery, fraud or wilful violation of any election law shall be forever disqualified from holding any office of trust or profit in this commonwealth." The court held that this meant "any election law then in existence, or thereafter to be passed by the legislature, which that body had a right to pass." It will be no-

ticed that the court limited the general words "any election law" to laws passed by the legislature of Pennsylvania. But if the court had applied the rules of construction contended for here by counsel for the state, the words "any election law" would have included the election laws of every state or country, so as to prohibit persons violating such laws in another state from afterwards holding office in Pennsylvania. But no such broad construction was suggested by either court or counsel in that case.

Again, take the illustration that the attorney general makes of a man in Missouri who shoots and kills a person in this state. He says that such a man could be indicted and punished here. Suppose that this is so, still the argument is not in point, for the defendant here · denies that, either in Missouri or elsewhere, it has entered into or made any combination to affect rates in this state. In other words, to continue the illustration, it denies that it has shot or killed any man in this state. Yet the state by its demurrer says that this is not a good answer.

But let us follow the argument of counsel for the state, and see whither it would lead. The defendant company is an English corporation engaged in the business of fire insurance. It may, and probably does, carry on such business, not only in America, but also in Europe and Asia. Now, under the construction which counsel for the state seeks to have placed on this statute, if this English company, while doing business here, should .at its office in England enter into an agreement with other foreign companies for the purpose of fixing rates of fire insurance in Hong Kong or in the city of Canton, China, it would at once become liable to a penalty under our statute; for counsel for the state contend that the words, "any pool or combination," used in the statute, embrace such combinations in any portion of the world. This, we admit, is the logical result of their construction of the law. There is no middle ground. Either the act applies only to combinations affecting persons, property or prices in this state, or its scope is unlimited. If this be the meaning of the statute, then, if the attorney general was informed that a company doing business here had entered into a combination in Japan or South Africa fixing rates for fire in-

surance in those countries, he would be required to institute an inquiry, and perhaps to take proof. It is easy to see that under such a law litigation might take a wide range, for the field of evidence would be as wide as the habitable globe. Investigations of that kind would be expensive. The time of the attorney general and the courts of the state would often be consumed by controversies concerning trusts and combinations in different parts of the world, having no reference to or effect upon the people of this state. If the legislature intended the statute to have such a broad scope, it should have expressly said so in plain words.

It is so unusual for a legislature to intend that its acts shall have such world-wide effect that courts are never justified in putting such construction upon them if their language admits of any other reasonable interpretation. *Bond* v. *Jay*, 7 Cranch, 350. Such a construction might result in defeating the main purpose in passing the act, for it is evident that one object in passing the act was to encourage competition. By preventing the combinations and agreements named in the act, the legislature wisely intended to stimulate competition, and thus reduce prices. But it might happen that a company willing to lower prices here might, by force of circumstances, be compelled to enter such combinations in certain foreign countries whose laws permit them. If such a company can, for that reason only, be shut out from doing business here, although its contract as to prices in such foreign country had no reference to, or effect upon, prices here, competition, instead of being increased, might be lessened, and prices thereby increased.

Again, this statute not only forbids corporations from entering into pools and combinations, but it also forbids individuals, persons and partnerships, and they are subjected to like penalties. Now, while the legislature can dictate the terms under which corporations of other states may do business here, it does not have such control of the citizen. If a merchant of Missouri, doing business also in this state, should enter into a pool or combination in Missouri to regulate prices there, but not intended to have effect in this state, our legislature could not on that account prevent him from doing business here or subject him to a penalty. So, if we adopt the construction con-

tended for by the attorney general, we must assume, as to a portion of the statute, that the legislature was attempting to do something it plainly had no right to do, and such portion must be treated as unconstitutional and void. But courts always endeavor to avoid declaring an act or any part thereof to be unconstitutional. If it can reasonably be done, they avoid such a result by giving the statute such a construction as will enable it to take effect in all its parts, for the presumption is that the legislature intended the whole act to take effect. This furnishes another reason why the construction contended for by counsel for the state should not be adopted.

Our conclusion is that this statute does not apply to pools or combinations formed outside of this state, and not intended to affect, and which do not affect, persons, property or prices of insurance in this state. In other words, we are of the opinion that the legislature, by this act, did not intend to prohibit or punish acts done or agreements made in foreign countries by corporations doing business here when such acts or agreements have reference only to persons, property or prices in such foreign countries. We therefore hold that the answer sets up a valid defense, and that the demurrer thereto was properly overruled. Entertaining no doubt of the correctness of the judgment of the circuit court, the same is affirmed.

WOOD J. The proposition, when analyzed, is exceedingly simple. The legislature has no extra-territorial power to punish crime. The crime specified in this act is the entering into, becoming "a member of, or a party to, any pool, etc., to fix or limit the prices or premiums to be paid for insuring property against loss or damage by fire," etc. If a foreign corporation doing business in this state enter into, or become a member of, this pool or trust beyond the limits of the state, then the crime is clearly committed beyond the limits of the state, unless the pool or trust is to fix the premiums for insuring property in Arkansas, in which event the crime put in motion in the foreign state takes effect and becomes complete in Arkansas. Just as in the cases cited by the attorney general, where a man in one state throws a stone or shoots a gun across the line and kills a man in another state, or forms a conspiracy in one state to burn

or destroy property in another state, the crime in such cases be-comes complete where the person is killed, or where the property is destroyed.   But where the foreign corporation enters into, and becomes a member of, a pool, or trust in a foreign state, which does not purport to, and does not in any manner, affect the property of the people of this state, of course no crime is committed in this state.

The legislature certainly did not intend to make a crime and punish the mere act of doing business in this state by a foreign insurance company, although a member of a pool  or trust, whether in or out of the state; for the very gravamen of the crime is entering a pool or trust to fix the price or prem-iums to be paid for insuring property, etc.   Now, suppose the member of the pool or trust in the foreign state proposed to do business, and did business, in Arkansas on a strictly competi-tive basis, which tended to cheapen and lower the rates of in-surance to the people of this state, could any dispassionate law-yer say that the legislature intended by this act to punish such a beneficial and commendable deed as that?   Certainly not. The legislature manifestly was intending to correct an evil ex-isting which affects, or might affect, injuriously the people of this state.   Now, the prohibiting of foreign corporations from doing business in this state on any terms and conditions that the legislature may prescribe is one thing, and the punishing of them for any crime they may commit is another and entirely different thing.   As to the former—the privilege to do busi-ness—the legislature had the power to say:   "Foreign corpora-tions, you cannot do business in this state, if you are a mem-ber of a pool or trust to fix or limit prices anywhere in the wide world."   As to the latter—the entering the pool or trust, the crime,—they could say:   "You will be punished with the severe penalties denounced by the act, if you are a member of a pool or trust to fix the price or premium upon property in Arkansas."

As the legislature had no power to punish foreign corpo-rations for becoming members of a pool or trust outside of the state, which did not propose to affect prices in the state, and as it did have full power to punish them for entering pools or trusts to affect prices or premiums in Arkansas, and also to

forfeit their right to do business in this state, is it not conclusive that they intended by the words "any pool or trust" to mean any pool or trust to fix the price or premium on property in this state? We must not convict the legislature of doing or attempting to do a vain and idle thing. Had the legislature intended to exclude foreign corporations that were members of a pool or trust anywhere in the world to fix prices anywhere outside of this state, how easy would it have been to have made it unlawful for such corporations to do business in this state, and to have provided sufficient penalties for the violation of such law to secure its enforcement. But no such thing as that was provided in the act under consideration. The purpose of the legislature is doubtless correctly reflected in the title: "An act providing for the punishment of pools, trusts and conspiracies to control prices," etc. The fact that the legislature embraced the other persons named in the act along with foreign corporations shows that it intended that these corporations might be considered as violating the law in the same way as any "partnership or individual or any other association or persons whatsoever" might do. It is an egregious mistake to suppose that a foreign corporation is guilty of an offense for merely doing business in this state, or to consider the act of doing business as an element of the offense under this law. It would be no more an offense for them to do business than for domestic corporations or individuals to do business. Foreign corporations are expressly authorized to do business. The doing of business by them is not an ingredient of the offense at all. The words, "and transacting or conducting any kind of business in this state," applied to them, are used in the sense merely of *descriptio personarum.* They merely indicate that these corporations are within the legislative jurisdiction because of the fact of their doing business in this state. There are no separate acts conjoined, as the attorney general supposes and argues, but one act. The proof which would establish the crime would also establish the forfeiture of the right to do business in the state. The legislature could both forfeit the right of the insurance company to do business and punish for the crime of entering a pool or trust to fix the price or premium, if the act

was done, or became complete and effectual, in Arkansas, but it could not punish for the crime unless it did.

Therefore the fact that the legislature has included individuals and domestic and foreign corporations, and has prescribed, as a result of the violation of this act, both a penalty for the crime committed and a forfeiture of the right to do business, shows conclusively that, as to foreign corporations, it could only have intended to reach such of these corporations as were in a pool or trust in this state, or in a foreign state, to regulate prices in this state.