## LEONARD v. STATE.

### Opinion delivered June 20, 1910.

1. STATUTES—EXTRATERRITORIAL EFFECT.—An intent to give extraterritorial effect to a statute will not be ascribed to the lawmakers unless the language employed affords no escape from such construction. (Page 384.)

2. LIQUORS—SALE OF LIQUOR IN PROHIBITED DISTRICT.—Kirby's Digest, § 5137, providing for the seizure and destruction of liquors "kept in any prohibited district to be sold contrary to law," has no application to liquor kept in a prohibitory district in this State for the purpose of selling it unlawfully in another State. (Page 384.)

Appeal from Benton Chancery Court; *T. Haden Humphreys,* Chancellor; reversed.

*McGill & Lindsey,* for appellants.

In filling shipping orders accompanied by the money, the sale takes place where the liquor is delivered to the common carrier for the consignee. 68 Ark. 266; 17 A. & E. Enc. L. 300. In the construction of statutes words and phrases will be given their familiar sense, unless they have acquired some technical meaning. 26 A. & E. Enc. of L. 605-6. The phrase "contrary to law" means the law of the jurisdiction of the lawmaking power. 13 Sawy. 143; 13 Blatch. 184; 2 Met. 338. It will not be presumed that the Legislature intended that a statute should operate beyond the territorial limits of its jurisdiction. 66 Ark. 466; 18 Ark. 255; 82 Ark. 405. The comity between States does not extend to assisting them in executing their penal laws. 70 Ark. 95; 72 Ark. 171; 77 Ark. 439; 80 Ark. 598; 83 Ark. 133; 20 Ark. 289; 53 Ark. 423; 56 Ark. 224; 87 Ark. 409

*Hal L. Norwood,* Attorney General, and *W. H. Rector,* Assistant, for appellee.

Sales made in Arkansas to citizens of Missouri (McDonald County) were made "contrary to law." 212 Mo. 648; 111 S. W. 509; 88 Ark. 269; Acts 1907, laws of Mo., p. 232. The crime is committed by keeping the liquor *within the State* with intent to sell it contrary to law *without the State.* Black on Intox. Liq., § 387; 11 Atl. 767; 16 Atl. 910; *Id.* 911; 63 N. H. 368; 17 *Id.* 373; 23 Cyc. 175; *Id.* 240.

McCULLOCH, C. J. The sheriff of Benton County, pursuant to a warrant authorizing him so to do, seized a large quantity of whisky and brandy in a prohibition district in that county,

which was alleged to be stored there for sale contrary to law. Appellants, J. W. Leonard and J. D. Yeargin, claiming to be the owners of the liquor, intervened and asserted their right to it, and on a trial the court found that the liquors were kept in a prohibition district of the county to be sold contrary to law, and ordered the same to be destroyed by the sheriff.

The liquors in controversy (22 barrels of whisky, two half-barrels of brandy and a ten-gallon keg of brandy) were found by the sheriff stored in a cabin on the premises of one Mc-Kuerly. The cabin is near the north and west lines of Benton County a few hundred yards from the Missouri line and about two miles from South West City, which is in McDonald County, Missouri. The cabin was locked, and the keys were in the possession of appellants, who resided and were engaged in business at South West City. They had formerly been in the liquor business at that place, and this is a lot of liquors which they had on hand when certain prohibition laws went into force in Missouri. It seems that they had purchased the liquor jointly, but divided it, and had it stored in a building in South West City when a raid and seizure by Missouri officers was threatened; and Leonard, in the absence of Yeargin, hurried it out of Missouri and brought it to the place referred to in Benton County, Arkansas, and there stored it in the cabin to prevent its seizure. There is no evidence at all that any of the liquor was ever sold in Arkansas, or that it was here for sale in this State; but the evidence does justify the finding that it was stored in Benton County to prevent its seizure by Missouri officers, and was kept there to be sold contrary to law in the State of Missouri.

The question thus presented is whether or not intoxicating liquors kept in this State for sale contrary to law in another State are subject to confiscation under our statutes. This depends upon a construction of our statutes on the subject; for, unless they be construed to authorize confiscation under those circumstances, we need not pass on the question whether it is within the power of the Legislature to authorize the confiscation of liquors not kept for sale in this State contrary to law.

The General Assembly of 1883 passed what is known as the "blind tiger statute," which makes unlawful the clandestine sale or giving away of alcohol, ardent, vinous or malt liquors,

etc., by a device known as the blind tiger, or by any other name or device. That statute provides that proof of certain things shall constitute *prima facie* evidence of guilt on the part of any owner of a house in which such liquor is found; and it provides that warrants may be issued authorizing a search for and seizure of such liquors, but it does not provide for the confiscation of the liquors thus seized. (Act of March 30, 1883; Kirby's Digest, § § 5140-5145).

The statute under which the present proceedings were instituted was passed by the General Assembly of 1899. The title is "An Act to suppress the illegal sale of liquors and to destroy same when found in prohibited districts;" and the first section reads as follows:

"It is hereby made and declared to be the duty of the chancellors, circuit judges, justices of the peace, mayors and police judges, on information given or on their own knowledge, or when they have reasonable grounds to believe that alcohol, spirituous, ardent, vinous, malt or fermented liquors, or any compound or preparation thereof commonly called tonics, bitters or medicated liquors of any kind, are kept in any prohibited district to be sold contrary to law, or have been shipped into any prohibited district to be sold contrary to law, that they issue a warrant, directed to some peace officer, directing in such warrant a seizure of such intoxicating liquors, and directing such officer on finding any such liquors in any prohibited district to publicly destroy the same, together with the vessels, bottles, barrels, jugs or kegs containing such liquors. Provided, that this act shall not apply to the giving away or selling of native wines where the sale is authorized by law. Provided further, any sheriff or other officer having knowledge of any such blind tigers and failing to perform his duty shall forfeit his commission. Provided, further, that the provisions of this act shall not repeal or affect section 5145. Provided, that any persons on whose premises or in whose custody any such liquor may be found under warrant of this act shall be entitled to his day in court before said property shall be destroyed." (Act of February 13, 1899; Kirby's Digest, § § 5137-5139).

This statute does not create a criminal offense nor provide a penalty for the commission of any act further than the seizure and confiscation of liquors "kept in any prohibited district to

be sold contrary to law." The manifest purpose of the statute was to supply the omission of the former statute by authorizing the destruction of liquor kept for unlawful sale. We are of the opinion that the words of the statute "to be sold contrary to law" refer to liquors kept for sale in this State contrary to law, and not to sales to be made outside of the State. This is plain from the title and the body of the statute, and particularly from that part which declares that "any sheriff or other officer having knowledge of *any such blind tigers* and failing to perform his duty shall forfeit his commission," which obviously refers to the keeping of the liquor for sale in this State contrary to law. Now, the term "blind tiger" is used in our statute with reference to a place for the clandestine sale or giving away of liquors by some device or other, and in employing the term "sold contrary to law" the Legislature is presumed to have aimed at liquors kept for unlawful sale here, not under any particular statute but unlawful under any statute of this State directed against sales without license. An intent to give extra-territorial effect to a statute will not be ascribed to the law-makers unless the language employed affords no escape from such construction. *State* v. *Lancashire Fire Ins. Co.*, 66 Ark. 466.

The statute is highly penal, and should be strictly construed. We have said, when construing the statute, that the liquor is the offender, and that it is immaterial who owns it. (*Osborne* v. *State*, 77 Ark. 439). But the intent with which it is kept here is controlling; for, in order to come within the terms of the statute, it must be kept for sale contrary to law, which means sale in this State contrary to law. Such is, we think, the only reasonable interpretation of the statute; and it follows that the decree is unsupported by evidence and is erroneous.

A decision of the Supreme Court of Rhode Island (*State* v. *Fitzpatrick*, 16 R. I. 54, 11 Atl. 767), is cited by the Attorney General in support of his contention that the statute means to confiscate liquor kept in this State to be sold anywhere contrary to law; but there is a difference between the precise language of our statute and that of the Rhode Island statute.

It is earnestly insisted by the Attorney General that the construction we now place on the statute would bring the laws of this State into disrepute by permitting whisky to be kept

on its borders for unlawful sale in other States. This, however, is a matter for the Legislature, as it is our province only to construe the statutes, not to enact them.

Reversed and remanded.