Robert S. CALVERT, Comptroller of Public
Accounts of the State of Texas,
Appellant,

v.

Siegfried SCHLUSSELBERG et al., dba
Texas Sales Company, Appellees.

No. 11641.

Court of Civil Appeals of Texas.

Austin.

Jan. 15, 1969.

Rehearing Denied Feb. 5, 1969.

interest, paid under protest following assessment by the State Comptroller.

During the years 1961 and 1962 the Texas Sales Company, operated by Siegfried Schlusselberg, Ali Schlusselberg, Henry Schlusselberg and Joachim Schlusselberg, made certain sales to Rudolfo Peretz and R. Vasquez who were residents of the Republic of Mexico. It was upon these sales that the assessment for sales taxes was made.

The facts show that Peretz made selections of merchandise, consisting principally of radios, watches, scarves, and fountain pens, at a Texas Sales Company store in El Paso about every thirty days; that the goods were delivered to Peretz at his residence in Mexico by one Emilio, who was paid by the package for his services; and that afterwards Peretz paid Texas Sales for the merchandise. Peretz testified he had about ten customers in Mexico to whom he resold all of the merchandise bought from Texas Sales. Sales to Peretz amounted to about $180,000 annually.

Ali Schlusselberg testified that he collected no sales tax on the goods sold in this manner to Peretz or to Vasquez, but did keep a "special book for them" so as not to get confused with "other retail business."

The Schlusselbergs pleaded that the sales to Peretz and Vasquez were "sales for resale" and "sales in foreign commerce" and therefore were exempt from the sales tax under provisions of the Limited Sales, Excise and Use Tax statute applicable in the years the sales were made. (Articles 20.01 (S), 20.04(N) (1) and 20.04(A) of Chapter 20, Title 122A, Taxation-General, Vernon's Ann.Civ.St.)

The applicable statute is Chapter 20 prior to its amendment in 1963 by Acts 1963, 58th Leg., p. 371, ch. 138, sec. 1.

The cause was tried before the court without a jury April 25, 1968. It was stipulated that facts developed during the trial relating to sales to Peretz would be con-

Crawford C. Martin, Atty. Gen., Nola White, First Asst. Atty. Gen., A. J. Carubbi, Jr., Executive Staff Asst., John R. Grace, Robert B. Davis, Asst. Attys. Gen., Austin, for appellant.

Peticolas, Luscombe & Stephens, John Luscombe, Jr., El Paso, for appellees.

O'QUINN, Justice.

The appellees, doing business in El Paso as the Texas Sales Company, brought this suit in district court of Travis County to recover certain sales taxes, penalty and

trolling on the question of taxability of goods sold to Vasquez. Testimony from Peretz and Ali Schlusselberg was heard by the court in support of the claim for refund. The trial court entered judgment May 13, 1968, awarding the Schlusselbergs recovery of $3,291.43 in taxes with interest. The court found in the judgment that the sales were "sales for resale" as the term is defined by statute and therefore were exempt.

The State has appealed and contends that the trial court erred (1) in holding that sales to Peretz were "sales for resale" as the term is defined in Article 20.01(S); (2) in holding that goods purchased in this State for resale in Mexico are exempt under Article 20.04(N) (1); and (3) in awarding the Schlusselbergs benefit of a tax exemption under Article 20.04(N) (1) because the holding would be against public policy.

Article 20.01(S) defines "sale for resale" in this manner:

"(S)   Sale for Resale. 'Sale for Resale' shall mean a sale of tangible personal property to any purchaser who is purchasing said tangible personal property for the purpose of *reselling it in the normal course of business. * * ***"* (Emphasis added, and provisions omitted as to sales of personalty for renting or leasing).

Under Article 20.04(N) (1) the receipts from all sales for resale "are exempted from the taxes imposed by this Chapter * * *"

This Chapter also makes specific provisions for goods intended for shipment outside this State into another State in the following language:

"(E)   Interstate Shipments.

"(1)   Property Shipped Outside State Pursuant to Sales Contract; Delivery by Retailer. There are exempted from the taxes imposed by this Chapter receipts from any sale of tangible personal property which, pursuant to the contract of sale, is shipped to a point outside this State by the retailer by means of:

"(a)   Facilities operated by the retailer.

"(b)   Delivery by the retailer to a carrier for shipment to a consignee at such point; or

"(c)   Delivery by the retailer to a customs broker or forwarding agent for shipment outside this State."

The State concedes that since the goods purchased in El Paso were for ultimate delivery to the purchaser in Mexico, an exemption could be allowed in the normal course of business by reason of the goods being considered a legitimate "export item" exempt from tax under Article I, section 10, clause 2 of the United States Constitution. This provision reads:

"No State shall, without the Consent of the Congress, lay any Imposts or Duties on Imports or Exports, except what may be absolutely necessary for executing its Inspection Laws; and the net Produce of all Duties and Imposts, laid by any State on Imports or Exports, shall be for the Use of the Treasury of the United States; and all such Laws shall be subject to the Revision and Controul of the Congress."

This exemption is recognized by specific provision of the Texas Sales Tax Act in Article 20.04(A), as follows:

"(A)   Constitution and Statutory Exemptions. There are exempted from the taxes imposed by this Chapter the receipts from the sale, lease or rental of and the storage, use or other consumption in this State of tangible personal property the gross receipts from the sale, lease or rental of which, or the storage, use or other consumption of which, this State is prohibited from taxing under the Constitution or laws of the United States or under the Constitution of this State."

Although the Schlusselbergs pleaded that sales to Peretz and Vasquez were exempt as "sales in foreign commerce," no attempt was made to show that the goods passed through normal export channels and procedures. In fact, the contrary appears to be the case.

Peretz testified that he had been in business close to fifteen years, buying a supply of articles about every thirty days, and disposing of the merchandise in Mexico to approximately ten regular customers, some of whom had shops and some of whom did not. Peretz also testified that the goods were delivered to him in Mexico at his residence. Peretz did not have a shop, and although in Mexico he was "considered an importer," he did not have an import license. Peretz stated he had never heard of "the export declaration" and did not know what it was.

Deliveries to Peretz were made by one Emilio, whose last name and whose address were unknown to both Peretz and Ali Schlusselberg, although both were acquainted with Emilio, whom Peretz had met "in a store in El Paso." Peretz at first testified that Emilio was his agent, but on further examination said that if he should call Emilio and direct him to take goods to a place other than the usual delivery point, " * * * he didn't do what I told him, he did what he wanted to do." When asked what would happen if the "customs people" stopped Emilio, Peretz replied, "Emilio, if they stopped him, that was his business and it was no concern of mine." Neither Peretz nor Schlusselberg was able to say whether Emilio paid customs charges. Peretz candidly described Emilio as " * * a person that is dedicated to cross things."

Notwithstanding the Schlusselbergs contend on appeal that evidence before the trial court showed that "the sales in question were for export and not taxable," their position is that the trial court correctly held that the sales were "sales for resale" and therefore exempt, and that "it was not necessary for the court to determine the question of sales for export, and the manner of importation of the goods would be moot."

Whether the trial court correctly held the sales to be "sales for resale" is the "sole question before the court" on appeal, the Schlusselbergs urge, and the "only unique fact is that the purchases made by the buyer are for resale at his place of business in Mexico City."

The State joins issue on this contention and takes the position that by construing the statute upon examination of the entire context, the exemption provided for "sales for resale" applies only to resales to take place in this State, and do not extend to resales in a foreign country.

■ We agree with the view urged by the State. We hold that the trial court erred in extending an exemption to the purchases made by Peretz and Vasquez as "sales for resale." The facts show without dispute that any resale by Peretz or Vasquez took place in a foreign country and not in this State.

■ The effect of the trial court's holding is that the term "sale for resale" encompasses all resales, whether made in this State or in a foreign country. This construction restricts itself to consideration only of Article 20.01(S), defining sales for resale. In construing this article, consideration must be given also to Article 20.04 (E), exempting interstate shipments, and to Article 20.04(A), recognizing exemption of goods exported to foreign countries.

■ In construing a statute, the courts will presume that the legislature meant that all the provisions of the statute would have effect and would be enforced. 53 Tex.Jur. 2d, Statutes, sec. 182, p. 281, and cases cited. A further rule stated by the Supreme Court of Texas is found in this language:

"The dominant objects sought to be expressed in statutes can be stated only in

general terms, and the rule of common sense should govern those called upon to construe and enforce them. It is impossible to pick out certain words or phrases or sentences, and detach them from the context of the law, and when thus isolated define them and arrive at the intention of the Legislature expressed in the law. *A statute should be construed as a whole in order to arrive at the purposes for which it was enacted.*" (Emphasis added) National Surety Corporation v. Ladd, 131 Tex. 295, 115 S.W.2d 600, 603 (1938).

■ There is nothing in the wording of the sales tax statute that can be construed as expressly giving extraterritorial effect to the articles related to and defining "sales for resale." Effect of a statute beyond the State will not be given by implication. See Marmon v. Mustang Aviation, Inc., 430 S.W.2d 182, 186–7 (Tex. 1968).

■ The general rule is stated in American Jurisprudence that " * * * a statute is prima facie operative only as to persons or things within the territorial jurisdiction of the lawmaking power which enacted it." 50 Am.Jur., Statutes, sec. 487, p. 511. The rule applies " * * * to statutes using general words, such as 'any' or 'all,' in describing the persons or acts to which the statute applies." See also State v. Lancashire Fire Ins. Co., 66 Ark. 466, 51 S.W. 633, 635, 45 L.R.A. 348.

The Schlusselbergs argue that once it was shown by the testimony and affidavits of Peretz and Ali Schlusselberg that the merchandise sold to Peretz was to be resold by him in Mexico, there was no tax.

The statute provides that if the goods are destined to move in foreign commerce there is no tax, and that if the goods are sold for resale, there is no tax. The purchases made by Peretz must be transactions falling under one of these categories if the tax is to be avoided.

Ali Schlusselberg testified that where he was not sure the goods would go to Mexico, he collected a tax, whether the sale was to a retailer or a wholesaler. His reason for not collecting the tax from Peretz and Vasquez was that the sales were "for wholesale and it was for export."

■ Wholesalers coming into Texas to purchase goods are not entitled to a tax exemption merely upon their representation to the seller that the goods will be resold in Mexico. To gain the benefit of an exemption under the statute, it must be shown that the goods are irretrievably committed to foreign commerce under usual and appropriate documents.

The State Comptroller is charged under the statute with enforcement of the "Chapter and may prescribe, adopt and enforce rules and regulations relating to the administration and enforcement of this Chapter." Article 20.11(A) (1). The Comptroller is aided by the presumption provided in the statute that goods sold are sold for consumption or for use, unless the contrary is established. Article 20.03(F).

■ We are of the opinion that the Comptroller was entitled to receive more proof than affidavits and oral testimony from the seller and the buyer to establish that the goods sold moved in foreign commerce. If there was an export, entitling the goods to immunity from the tax, proof was available to establish conclusively the process of exportation and the transactions and documents embraced in it. Empresa Siderurgica v. County of Merced, 337 U.S. 154, 69 S.Ct. 995, 93 L.Ed. 1276.

The trial court did not find as a basis for the judgment that the sales were exempt because the goods moved in foreign commerce. The court found that the sales were "sales for resales," which we hold were intended by the legislature to be limited to resales within this State.

■ Chapter 20 does not contemplate that in the enforcement and adminis-

tration of the tax statute the Comptroller will have need, or will be required, to send agents into foreign countries to perform the duties and functions imposed upon this officer. If the goods sold are to be exempt because they move in interstate shipment, Article 20.04(E) (1) controls. Goods exported are exempt under Article 20.04 (A). Proof of either such movement can be made and furnished the Comptroller within the limits of this State. Unless "sales for resale" are limited to resale within this State, the statute implies an extraterritorial effect to afford the Comptroller means of verifying that the goods ceased to be part of the general mass of property in Texas and ultimately were resold in a foreign country. Neither expressly nor by implication does the tax statute require this extraterritorial enforcement of the Comptroller.

The legislature provided that goods sold for bona fide export to a foreign country would be exempt from the Texas sales tax. Neither Peretz nor the Schlusselbergs sought to obtain the exemption by a declaration of export that would negative use or consumption in this State and affirmatively establish that the goods were irrevocably placed in their final movement out of this State to Mexico. Instead the Schlusselbergs undertook by oral testimony and affidavit to show only that on the dates of the sales there was a plan to move the property to Mexico and that in due course the plan was executed and the goods were there resold. On these representations, the Schlusselbergs ask that the sales be exempt as "sales for resale." Exemption of sales made for the purpose of resale in the normal course of business can be verified by the Comptroller only if the resale takes place in this State. If the resale is to take place in a foreign country, that fact becomes immaterial for purposes of tax exemption because exports to foreign countries are entitled to the benefits of Article 20.04(A).

The legislature having specifically dealt with the sale of goods destined for export to a foreign country, these provisions and the law concerning them [see Eardley Fisheries Co., Inc. v. City of Seattle, 50 Wash.2d 566, 314 P.2d 393 (1957)] are exclusive in determining the immunity of such sales from taxation. The resale provisions of Art. 20.01(S) are inapplicable to goods committed to movement in export trade, and the Schlusselbergs having failed to make a proper showing that the goods involved were purchased for export, should be denied any relief.

The judgment of the trial court is reversed, and judgment is here rendered that appellees take nothing in their suit to recover the taxes assessed and collected by the Comptroller.

Judgment of the trial court is reversed and rendered.