KANSAS CITY SOUTHERN RAILWAY COMPANY *v.* STATE.

Opinion delivered January 25, 1915.

1. RAILROADS—FULL CREW LAW—LENGTH OF LINE.—Act 116, Acts 1907, held to require a full crew of three brakemen on certain freight trains operated by railroads whose lines are over fifty miles in length, whether the fifty miles was wholly or only partially within this State.

2. RAILROADS—FULL CREW LAW—CONSTITUTIONALITY.—Act 116, Acts 1907, requiring certain railroads to carry full crews on certain trains; *held*, not to conflict with the Fourteenth Amendment and the commerce clause of the Constitution of the United States.

Appeal from Benton Circuit Court; *J. S. Maples*, Judge; affirmed.

STATEMENT BY THE COURT.

Appellant brings this appeal from a judgment of conviction for violation of the ''Full Crew Law'' or ''Three Brakeman Act'' of Arkansas, Act No. 116, of the Acts of 1907, in Benton County, by operating a freight train, consisting of more than twenty-five loaded freight cars and a caboose, over its line of road in said county, with a crew of less than three brakemen.

It admitted operating a freight train over its line of railroad in Benton County, which it alleged was only

28.8 miles in length, with only two brakemen, and that its entire line of railroad is more than fifty miles in length, but denied that it had over fifty miles of railroad in Benton County, stating that its line in the said county, starting at Sulphur Springs enters the State of Oklahoma at a distance of 28.8 miles, the exact mileage between the Missouri line and the Oklahoma line being 28.83 miles and denying that the train was operated unlawfully or in violation of the act, alleging that same was not applicable to such train or the operation of its road in that county. It alleged further that the act was not applicable to its trains operated upon its road in said county and if held to be, challenged the act as in conflict with the commerce clause of the Constitution of the United States and as depriving it of its property without due process of law and denying it the equal protection of the law as guaranteed by the Fourteenth Amendment to said Constitution.

It further alleged said act was in conflict with the Interstate Commerce Act, approved June 26, 1906, and the amendments thereto.

From the agreed statement of facts upon which the case was tried, it appears that appellant is a corporation of Missouri, owning and operating a line of railroad from Kansas City through that State, Kansas, Arkansas, Texas and Louisiana to Port Arthur, a distance of over 700 miles. The road runs from Missouri through Benton County, Arkansas, 28.83 miles, into Oklahoma. On the date alleged, August 14, it was engaged in the transportation of freight over said portion of its line in Benton County, operating a train, consisting of twenty-six freight cars and a caboose, manned by a crew including only two brakemen. It operated a like freight train, consisting of twenty-seven cars and a caboose over its said line of road in Benton County on August 15, with a crew including only two brakemen, there being no strike among its employees at the time.

The line of road after leaving Benton County runs into Oklahoma and enters the State of Arkansas again near Fort Smith, where it extends into the State about

half a mile in the limits of said city. This is a part of a branch line running from Spiro, Oklahoma, on the main line, to Fort Smith. The main line enters the State of Arkansas again from Oklahoma near Howard, on its western boundary and extends through this State southward for about fifty-five miles, where it crosses Red River into the State of Texas and runs through that State for a distance of about twenty miles, the road therein being owned by the Texarkana & Fort Smith Ry. Co., and then enters the State of Arkansas again and extends through the southwest corner of Miller County a distance of 7.4 miles and then on into the State of Louisiana.

*James B. McDonough,* for appellant.

By its terms the law does not apply to a road less than fifty miles in length. Acts 1907, p. 295. As applied to roads more than fifty miles in length the act was upheld by this court, 86 Ark. 412, and by the United States Supreme Court, 219 U. S. 453, but the question raised here was not passed upon.

Section 1 of the act gives clearness and certainty of meaning to section 2, and necessarily refers to the length of line in Arkansas.

In the construction of a statute, the entire act must read as one; its meaning must be gathered from the whole, and such construction given to the several provisions as will render them consistent and give effect to each. 99 Ark. 149; 102 Ark. 213; 11 Ark. 44; 22 Ark. 369; 28 Ark. 200; 31 Ark. 119; 38 Ark. 205.

There is nothing in the act showing an intent to give extra-territorial effect to the statute, even if the Legislature had that power, and in the absence of language showing an intent to give it such effect, it will not be so construed. 95 Ark. 381; 66 Ark. 466; 82 Ark. 405; 101 N. E. (N. Y.) 894; 125 Pac. 812. No State has power to give its laws effect beyond its boundaries. 36 Cyc. 829, notes 21 and 23, and cases cited; 53 S. W. 809; 42 N. Y. 283; Sedgewick on Stat. Construction, 56, 57, and cases cited; 187 U. S. 617.

Statutes which impose burdens not known to the common law should be construed strictly in favor of those upon whom the burdens are imposed. 71 Ark. 556.

2. The full crew law, if applied to this line in Benton County, is void, because it is a burden upon interstate commerce. Art. 1, sec. 8, Const. U. S.; 210 U. S. 281; 95 U. S. 465; 201 U. S. 321; 202 U. S. 543.

3. If applied to appellant's lines in Benton, Sebastian and Sevier counties, the act is unreasonable and denies to appellant the equal protection of the laws, and deprives it of its property contrary to the Fourteenth Amendment. 118 U. S. 356; 165 U. S. 150; 174 U. S. 96; 183 U. S. 79; 184 U. S. 540; 232 U. S. 626; 230 U. S. 139; 229 U. S. 397; 230 U. S. 340; 42 L. R. A. (N. S.) 106.

*Wm. L. Moose*, Attorney General, and *Jno. P. Streepey*, Assistant, for appellee.

1. The plain meaning and intent of the act was and is that all railroads authorized to do business in this State, whose roads are fifty miles or more in length and a part of which runs into or through this State, shall be subject to the provisions of the act. Acts 1907, p. 295, § 2; 86 Ark. 412; 219 U. S. 453; 165 U. S. 628.

2. It is not a burden on interstate commerce. 55 Law Ed., 290-296.

Kirby, J., (after stating the facts). It is first contended for appellant that the act is not applicable to the operation of its road in Benton County, which is less than fifty miles in length within the State, therein. Section 1 of the act provides that no railroad company, etc., operating any line of railroad in the State, engaged in the transportation of freight, shall equip its freight trains, with a crew consisting of fewer men than an engineer, fireman, conductor and three brakemen, "regardless of any modern equipment of automatic coupler and air brakes, except as hereinafter provided." Section 2 provides the act shall not apply to any railroad company or officer of court, operating any line of railroad, whose line or lines are less than fifty miles in length, nor to any railroad in the State, regardless of length, where

the freight train operated shall consist of less than twenty-five cars, and "it being the purpose of this act to require all railroads in this State whose line or lines are over fifty miles in length engaged in hauling a freight train, consisting of twenty-five cars or more, to equip the same with a crew, consisting of not less than an engineer, a fireman, a conductor and three brakemen, etc.," and permitting the increase of the number of the crew.

Section 3 provides that the penalties of the act shall not apply during strikes of men in the service of the lines involved.

(1)   The evident purpose of the act as therein declared, is to require all railroads over fifty miles in length, engaged in the operation of trains and the hauling of freight, to equip the freight trains of the designated length with the full crew including three brakemen and this relates to all railroads operating in the State, whose line or lines of road are more than fifty miles in length, whether they are fifty miles in length within the State or not.

If it had been the intention to require only such roads as operated a line fifty miles in length within the State words clearly manifesting that intention would have been used and not the expressions that were employed, which clearly manifest the intention to make this requirement of all railroads operating in the State, whose entire operative line is fifty miles or more in length. The law fixing the rate that may be charged for the carriage of passengers makes a like classification of railroads operating in the State of the length designated therein and it has not been questioned that the purpose and effect of such law was to fix the rate that might be charged for the carriage of passengers upon a road operated in the State, if the entire length of road was more than that designated in the statute, without regard to whether it was all in the State or not. It does not operate as an attempt to extend the authority of the State beyond its confines nor to give the law extra-territorial effect (*Leonard* v. *State,* 95 Ark. 381; *State* v. *Lancashire Ins. Co.,* 66 Ark.

466; *Anderson* v. *State,* 82 Ark. 405), but only as a classification of such lines as are required to comply with its provisions in order to protect the employees operating the trains and the public. This classification has been held reasonable and proper, both by this court and the Supreme Court of the United States. *Chicago, R. I. & P. Ry. Co.* v. *State,* 86 Ark. 412, s. c. 219 U. S 453.

In affirming the judgment of this court, declaring this act not a burden upon interstate commerce, nor in conflict with the commerce clause of the United States Constitution, the court said:

"It is too much to say that the State was under an obligation to establish such regulations as were necessary or reasonable for the safety of all engaged in business or domiciled within its limits. Beyond doubt, passengers on interstate carriers while within Arkansas are as fully entitled to the benefits of valid local laws enacted for the public safety as are citizens of the State. Local statutes directed to such an end have their source in the power of the State, never surrendered, of caring for the public safety of all within its jurisdiction; * * * the statute here involved is not in any proper sense a regulation of interstate commerce, nor does it deny the equal protection of the law. Upon its face it must be taken as not directed against interstate commerce, but as having been enacted in aid, not in obstruction, of such commerce, and for the protection of those engaged in such commerce." *Chicago, R. I. & P. Ry. Co.* v. *Arkansas, supra.*

(2) Thus has the contention of the appellant railroad company that said act is in conflict with the Fourteenth Amendment and the commerce clause of the Constitution of the United States been determined against it, both by our court and the Supreme Court of the United States.

Neither do we think there is any merit in appellant's contention that the conclusion herein announced is in conflict with *South Covington & Cincinnati Railway Co.* v. *City of Covington et al.,* 235 U. S. 537, which is an authority in its favor. There the court in

discussing the class of cases wherein the State may regulate the matter legislated upon until Congress has acted by virtue of the supreme authority given it by the commerce clause of the Constitution said: "The subject was given much consideration in the Minnesota Rate Cases, 230 U. S. 352, and the previous cases, dealing with this subject are therein collected and reviewed in the light of these cases, and upon principle, the conclusion is reached that it is competent for the State to provide for local improvements to facilitate, or to support reasonable measures as to the health, safety and welfare of the people, notwithstanding such regulations might incidentally and indirectly involve interstate commerce."

There being no error in the record, the judgment is affirmed.