PUBLIC SERVICE COMMISSION OF INDIANA ET AL. *v.*
THE NEW YORK CENTRAL RAILROAD ET AL.

[No. 30,733.  Filed May 19, 1966.]

*James E. Noland* and *Hilgedag, Noland & Johnson,* of Indianapolis, for appellants, The Brotherhood of Locomotive Firemen and Enginemen and Order of Railway Conductors and Brakemen, *John J. Dillon,* Attorney General, and *Lloyd C. Hutchinson,* Assistant Attorney General, for appellants, Public Service Commission of Indiana, its Members and other State Officers.

*Karl J. Stipher, Daniel E. Johnson* and *Baker & Daniels,* of counsel, of Indianapolis, for appellees.

JACKSON, J.—Appellees on May 13, 1964, filed a complaint in the Superior Court of Marion County, Indiana, Room 3, seeking a temporary and permanent injunction to prevent the enforcement, by certain of the appellants therein named, of Acts 1937, ch. 58, §§ 1-13 (inclusive) being §§ 55-1326—55-1338, Burns' 1951 Replacement.

The law challenged by appellees' complaint is known as the Indiana Full Crew Law. The aforesaid complaint alleged that

the Governor, the Attorney General and the Public Service Commission of Indiana are required to enforce the above mentioned law; and further alleged that said law is violative of appellees' rights under the Indiana and the United States Constitutions; said complaint further alleged that Congress by the adoption of Public Law 88-108, 77 Stat. 132, enacted August 28, 1963, preempted the field in which said law was designed to operate, and

"For the reasons hereinbefore alleged, the application of the Indiana Excess Crew Law to the plaintiffs herein is unreasonable, arbitrary, capricious and unconstitutional in the following respects:

"(a) Such law does not tend to promote or protect the public health, morals, safety or welfare of the people of the State of Indiana and is, therefore, not justified as an exercise of the police power of the State of Indiana but is an invalid and unauthorized attempt to exercise such power in violation of Article 1, Sections 1, 12 and 21, of the Indiana Constitution and the Fourteenth Amendment to the Constitution of the United States.

"(b) Such law interferes with and deprives plaintiffs of personal rights and liberty in violation of Section 1, Article 1, of the Indiana Constitution and the Fourteenth Amendment to the Constitution of the United States.

"(c) Such law deprives plaintiffs of their business and property without just compensation and without due process of law in violation of Section 12 and 21, Article 1, of the Indiana Constitution and the Fourteenth Amendment of the Constitution of the United States.

"(d) Such law deprives plaintiffs of equal protection of the laws in violation of Article 1, Section 23, of the Indiana Constitution and the Fourteenth Amendment to the Constitution of the United States.

"(e) Such law is not a general law but is discriminatory and does not apply equally to all persons in like circumstances in violation of Section 23, Article 4, of the Indiana Constitution and the Fourteenth Amendment to the Constitution of the United States.

"(f) Such law imposes undue and unreasonable burdens on interstate and foreign commerce in violation of Article 1,

Section 8, Clause 3, of the Constitution of the United States, commonly known as the 'Commerce Clause.'

"(g)   Such law is contrary to and interferes with Public Law 88-108 and the binding award made pursuant thereto, and thereby violates the Commerce Clause (Article 1, Section 8, Clause 3) and the Supremacy Clause (Article 6, Section 2) of the United States Constitution."

Appellees' complaint further alleged that irreparable injury would result from the continued enforcement of such law and prayed for a temporary injunction against the enforcement thereof.

The issues were formed, at the hearing on the temporary injunction, by appellants' affidavits, objections and arguments offered in opposition to appellees' request for temporary injunction and the affidavits and exhibits offered in support of the petition by appellees.   Hearing thereon was had on September 23, 1964.

February 3, 1965, the trial court granted the temporary injunction sought by appellees. The temporary injunction, in pertinent part reads as follows:

"IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED by the Court as follows:

"1.   The defendants, Public Service Commission of Indiana and Merton Stanley, Phillip L. Bayt, and C. Patrick Clancy, individually and as members of and constituting the Public Service Commission of Indiana, together with their successors in office, agents, servants, attorneys and all others in active concert with them, and each of them, are hereby until further order of this Court, jointly and severally enjoined from in any manner enforcing or threatening to enforce Chapter 58, Acts of The Indiana General Assembly for 1937 (Burns Ind. Stat. Ann., 1951 Repl., Sec. 55-1326 through -1338) and from taking any steps or relating or instituting or causing to be related or instituted any legal proceedings such as injunction, imposition of penalties or otherwise to enforce the provisions of said statute against plaintiffs, or any one of them, or their agents and employees.

"2.   The bond is set in the penal amount of $5,000.00, and the plaintiffs' written undertaking with surety in this amount is approved by the Court.

"3. This temporary injunction shall be effective immediately, and the Sheriff is hereby ordered immediately to serve a copy of this temporary injunction upon each of the defendants named in this order."

The appeal here under consideration was taken directly from the action of the court in granting such temporary injunction, pursuant to Acts 1921, ch. 251, § 1, p. 741, § 2-3218, Burns' 1946 Replacement.

March 10, 1965, appellants filed transcript and assignment of errors with the clerk of this court. The Assignment of Errors, omitting formal parts and signatures thereto, reads as follows:

"The appellants aver that there is manifest error in the interlocutory order of the Superior Court of Marion County, Room No. 3 and in the proceedings had in this cause which are prejudicial to appellants, in that:

"1. The court erred in admitting into evidence, over objections of appellants, affidavits and exhibits of appellees in support of rhetorical paragraphs 28 and 40 of their complaint, being plaintiffs' Exhibits N and Q, as to which such pargraphs 28 and 40 the court sustained appellants' motion to strike.

"2. The court erred in admitting into evidence, over objection of appellants, all of the affidavits and exhibits of appellees allegedly in support of rhetorical paragraphs 25, 26, 33, 34, 36 and 37 of their complaint, which said paragraphs allege changed conditions since enactment of Chapter 58 of the Indiana Acts of 1937.

"3. The court erred in granting the temporary injunction requested by appellees."

Appellees' complaint contained 46 rhetorical paragraphs, the first 20 of which were concerned solely with the identification of the parties, while the remaining 26 paragraphs were purportedly directed against the constitutionality of the Full Crew Law in its entirety. It is apparent, however, that appellees' concern was clearly limited to the need for employing firemen on all trains, and extra brakemen on freight trains of seventy cars or more. Thus, the question is narrowed

to a determination of whether or not the provisions of the Full Crew Law, requiring firemen on all trains and the extra brakemen on trains of 70 cars or more, are constitutional in their application to appellees.

The constitutional issues formed in the complaint are summarized in rhetorical paragraph 44 thereof. Subparagraphs (a), (b) and (c) of said paragraph charge the improvident exercise of the police power made so by the changed conditions in railroading since World War II, thus, a violation of the due process clauses of the State and Federal Constitutions was assigned; subparagraphs (d) and (e) regard the law as being violative of the equal protection clauses of said constitutions; subparagraph (f) cites the Federal Commerce clause as grounds for the laws unconstitutionality; and subparagraph (g) contends that the field covered by the Full Crew Law has been preempted by Federal Legislation and, therefore, violates the commerce and supremacy clauses of the Constitution of the United States.

While the complaint and the issues formed in the case at bar raise all the questions presented, one of the prime issues to be determined is, did the trial court abuse its discretion in granting a temporary injunction under the law and the facts of the instant case?

We take judicial notice that after the institution of this appeal the Supreme Court of the United States accepted jurisdiction in an appeal from the U. S. District Court for the Western District of Arkansas wherein the District Court, without hearing any evidence, sustained the plaintiffs' motion for a summary judgment, holding that the Arkansas statutes are "in substantial conflict with Public Law 88-108 . . . and proceedings thereunder, and are therefore unenforceable against the plaintiffs . . . 239 F. Supp. 1, 29." The question presented under the Arkansas statutes[1]

---

[1] Ark. Act 116 of 1907, Ark. Stat.Ann. §§ 73-720 through 722 (1957); and Ark. Act 67 of 1913, Ark. Stat. Ann. §§ 73-726 through 729 (1957).

are practically identical with the Indiana Statute[2] here in controversy.

By virtue of the fact that the Federal questions presented in the Arkansas case are present in the case at bar, under a similar statute, this court withheld its decision pending a determination of the Arkansas case by the Supreme Court of the United States. That court by its opinion *Engineers* v. *Chicago, R. I. & P. R. Co.* Nos. 69 and 71, October Term, 1965, dated January 31, 1966, decided I "[i]n the face of the clear congressional history of this Act we could not hold that either the Act itself or the arbitration awards made under it supersede the Arkansas state laws." [Public Law 88-108].

In its finding No. II the Supreme Court held as follows:

"The railroads contend that the District Court would have been justified in holding the two Arkansas Acts unconstitutional on the second ground of their motion for summary judgment which is that the Two Acts 'constitute discriminatory legislation against interstate commerce in favor of intrastate commerce.' Aside from the fact that such an argument was apparently rejected in the prior cases upholding the constitutionality of the Arkansas statutes we think it is wholly without merit. The argument is based on the fact that the 1907 state law exempts railroads with less than 50 miles of track and the 1913 law exempts railroads with less than 100 miles of track. None of the States' 17 intrastate railroads have more than 50 miles of track. It turns out that none of them are subject to the two state laws while 10 of the 11 interstate railroads are subject to the 1907 Act and eight of them are subject to the 1913 Act. It is impossible for us to say as a matter of law that this difference in treatment by the State, based on the differing mileage of railroads, is without any rational basis as the railroads contend. Certainly some regulations based on different mileage of railroads might be wholly rational, reasonable, and desirable. We cannot say on the record now before us that classification according to the length of mileage in these two statute constitutes discrimination against interstate commerce in violation of the Commerce Clause or the Equal Protection Clause. See *Florida Lime Growers* v. *Paul*, 373 U. S. 132, 137."

[2] Ind. Act 58 of 1937, §§ 55-1326 to 55-1338 incl. Burns 1951 Repl.

The Supreme Court of the United States having by its opinion above cited determined that:

1. Public Law 88-108 did not supersede the Arkansas state laws, and

2. Classification according to mileage in these statutes does not constitute discrimination against interstate commerce in violation of the Commerce Clause or the Equal Protection Clause. By analogy we are of the opinion that such determination likewise, in the case at bar, has decided those questions adversely to plaintiffs below; and that we are now confronted only with the determination of the question as to the constitutionality of the Indiana Full Crew Law (Acts 1937, ch. 58, *supra*) and whether or not the trial court abused its discretion in granting a temporary injunction under the law and the facts of the instant case.

It appears that in 1907 Indiana enacted its first Full Crew Law (Acts 1907, ch. 11). That law applied to all passenger and mail trains five cars or more in length, and to freight trains owned by companies that operated more than four freight trains in every 24 hour period. Under this act all passenger and freight trains of less than 50 cars were required to have a crew of five, consisting of an engineer, a fireman, a conductor, a brakeman and a flagman. Freight trains of more than 50 cars in length were required to have six crewmen, *i.e.,* one brakeman in addition to the other five crewmen. That act was attacked as being an invalid exercise of the police powers of the State in the case of *Pittsburgh, etc. R. Co.* v. *State* (1909), 172 Ind. 147, 87 N. E. 1034. The Act was declared to be constitutional by this court and that decision was affirmed by the United States Supreme Court in 223 U. S. 713.

Acts 1909, ch. 25, repealed the 1907 Act and enacted a new Full Crew Law which was repealed by Acts 1921, ch. 81. Indiana was without a Full Crew Act from that time until the enactment of the present Full Crew Act (Acts 1937, ch. 58, §§ 1-13, §§ 55-1326—55-1338, Burns' 1951 Replacement).

There was little change in the present Act from that of the 1907 Act, the principal difference in the two being that the 1907 Act required the additional brakeman on trains of 50 cars or more while the 1937 Act required the additional brakeman on trains of 70 cars or more. The 1937 Act until now has not been tested at the Appellate Court level, but it did withstand a constitutional attack in the Marion Circuit Court wherein Special Judge Robert Lybrook sustained the demurrer of the Public Service Commission and the Brotherhoods. *Pennsylvania R. R.* v. *Public Service Comm.* Cause No. 60,534, decided February 26, 1963.

In view of the fact that the 1907 Act relating to the Full Crew Law withstood the test of constitutionality in the courts, at both the State and Federal levels; the further fact that the 1937 Act while not having been tested at the Appellate level in the State courts, was sustained in the trial court on the constitutional question, and that determination was not appealed from, as indicated in the preceding paragraph of this opinion, together with the rule of law that the constitutionality of an act is presumed, until overthrown by the courts, *Richmond Baking Co.* v. *Dept. of Treasury* (1939), 215 Ind. 110, 18 N. E. 2d 778, provides cogent reasons to support the Act here in controversy. Careful consideration of the issue presented on that question requires us to hold, and we so do, the Act to be constitutionally valid.

The only question now remaining to be determined in the case at bar is whether or not error was committed in granting the temporary injunction, and we now address ourselves to the consideration of that issue.

Appellants contend, properly, that to entitle appellees to the relief sought below, *i.e.* temporary injunction, it was mandatory for them to make a prima facie showing of emergency and irreparable injury. Appellants further contend that appellees were compelled to make a prima facie showing that the Full Crew Law is unconstitutional upon one of the theories advanced, and in addition, appellees had

to show, prima facie, their entitlement to temporary relief as required by established equitable principles. The questions as to the constitutionality of the Act have been decided adversely to appellees.

Plaintiffs below, appellees here, incorporate in their complaint several paragraphs alleging the amount of money it is costing them to comply with the provisions of the Full Crew Law, and allege that violations thereof may impose penalties. No additional allegations of fact are made to support the need for a temporary injunction. The evidence adduced in support of these allegations clearly indicates that the changes in operating procedure began in 1937 when the change over from steam to diesel power began; at and after that date appellees urge that the changed conditions resulted in a decrease in less-than-carload lots of freight, decrease in difficulties in switching and flagging, use of longer trains and fewer stops etc. Assuming, arguendo, that these allegations are true, the fact remains that these changes have been in existence for years and appellees have been compelled to comply with the Full Crew Law since its enactment in 1937 and during the years the changes were taking place. Under the circumstances and facts delineated in the case at bar we are unable to see on what basis or theory appellees can sustain the allegations of emergency and irreparable injury set forth in the complaint; on the contrary it appears that the changes alleged and testified to in the case at bar have been in existence over such a period of time as to conclusively negate appellees' ability to show either an emergency or irreparable injury.

In arriving at a determination of the issues involved in the case at bar we take cognizance of, and accept at face value, the appellees statements that they have made great technological advancements and that the evidence revealed that these operating changes in railroading were occurring in Indiana all during the period between 1937 and the date suit was filed in the instant case and that these

changes are still occurring. We point out however that these technological advances and the changes made and being made occurred and are occurring by reason of necessity, to meet competition, and we observe that on the whole they have not resulted in any appreciable available increase in service to the public. In some areas and in many ways available services have declined in both quality and quantity, or have been entirely eliminated. In any event the alleged improvements in technology and operating changes cannot here be used to justify a reduction in appellees work force. Such relief, if justified, is properly found in the legislature and not the courts.

The recent decision of the United States Supreme Court, in *Brotherhood of Locomotive Engineers* v. *Chicago, R. I. & P. R. Co.*, 86 S. Ct. 594, dated January 31, 1966, *supra*, ■ holds that the federal statute has not pre-empted the field covered by the subject matter of the law here challenged. The fact that this court has heretofore held, and again now holds that the "full crew law" (Acts 1937, ch. 58, §§ 1-13 inclusive, §§ 55-1326—55-1338, Burns' 1951 Replacement) is constitutional, and that we have given in this appeal consideration to the changes in condition alleged by appellees not only permits, but requires this court, in the case at bar, to enter a final judgment herein. The facts and determination heretofore and here stated, bar appellees from taking any further action in the court below and leaves the trial court with no jurisdiction or authority to grant the relief there prayed for and deprives it of any further jurisdiction to do anything other than make the entry required therein by this opinion.

This court has previously indicated the general equitable principles required before the granting of a temporary injunction,

"Generally, the purpose of an injunction pendente lite is to preserve the status quo. A temporary injunction will be granted where it appears that the case is a proper one

for investigation in a court of equity. However, it ought not be awarded for a tentative purpose, but only in a case where it is shown that there is an impending injury or urgent necessity which demands the immediate interposition of a writ of injunction, although it is not essential that a case be made out which will entitle the applicant to relief at the final hearing." 16 I. L. E., Injunctions, § 2, p. 4; *The Ind. Annual Conf. Corp. et al.* v. *Lemon, etc.* (1956), 235 Ind. 163, 131 N. E. 2d 780; *Pub. Ser. Com.* v. *Indpls. Railways* (1947), 225 Ind. 30, 72 N. E. 2d 434; *Weis* v. *Cox* (1933), 205 Ind. 43, 185 N. E. 631, 632; *City of LaPorte* v. *Scott* (1906), 166 Ind. 78, 76 N. E. 878, 881; See also: 16 I. L. E. Injunctions, § 96, p. 66.

The above cited authorities hold that the purpose of a temporary injunction is to preserve the status quo on the grounds of emergency and irreparable injury, and in addition thereto it must be shown that the defendants can be adequately indemnified by a bond.

In the case at bar we are compelled to conclude that the Superior Court of Marion County, Room 3, in granting the temporary injunction, abused its discretion.

The judgment and decree of the Superior Court of Marion County, Room 3, is reversed, the temporary injunction vacated, this cause is remanded and the court is directed to enter final judgment therein denying plaintiffs below the relief sought all at the costs of plaintiffs below. The clerk of this Court is now ordered to transmit immediately, a certified copy of this opinion to the clerk of the Superior Court of Marion County, Room No. 3, and to the Circuit Court of Shelby County, Indiana, to which court the cause here appealed from has been venued.

Myers, C. J., concurs. Arterburn, concurs in part, with opinion. Rakestraw and Achor, JJ., not participating.

### ARTERBURN, J.—CONCURRING IN PART

I concur in the result of the opinion on the appeal from the temporary injunction. However, I feel the appellant should not be barred from having a trial on the merits of the main

action, which is still pending in the trial court, as provided by the mandate in the majority opinion in this case.

NOTE.—Reported in 216 N. E. 2d 716.