INDIANA HARBOR BELT RAILROAD COMPANY *v.* PUBLIC
SERVICE COMMISSION OF INDIANA ET AL.

[No. 1269A241. Filed October 29, 1970. Rehearing denied
December 2, 1970.]

*Karl J. Stipher, Terrill D. Albright, Baker & Daniels, John Wood, Bamberger & Feibleman,* of Indianapolis, for appellants.

*Theodore L. Sendak,* Attorney General, *Robert A. Zaban,* Deputy Attorney General, for appellees.

SHARP, J.—This appeal arises from an order of the Public Service Commission of Indiana, hereinafter called Commission, in favor of Appellee George B. Lee as Representative of the Railroad Firemen's Union who had filed a complaint with said Commission asserting that the Appellant Indiana Harbor Belt Railroad Company, hereinafter called IHB, was operating its tracks in violation of the Indiana Full Crew Law, Acts 1937, ch. 58, which is found in Burns' Indiana Statutes Annotated, § 55-1326 through § 55-1338.

The only real issue before this court is whether the decision of the Commission is supported by substantial evidence of probative value. The critical finding of said Commission was that IHB had more than 25 miles of mainline track within the meaning of the Indiana Full Crew Law. The pertinent section of the Indiana Full Crew Law is found in Burns' Indiana Statutes Annotated, § 55-1326, which reads in part as follows:

"(a) When used in this act and for the purpose of this act (§§ 55-1326—55-1338): The term 'carrier' shall mean a common carrier by railroad, and any receiver of [or] any other individual body, judicial or otherwise, when in possession of the business of a carrier or carriers covered by this act (§§ 55-1326—55-1338), excluding street, suburban and interurban electric railways, unless operated as a part of a general railroad system of transportation, *and excluding common carriers by railroad whose main line track is twenty-five (25) miles or less in length.*" (our emphasis)

The pertinent findings in the order of the Commission are as follows:

"3. That since May 4, 1964, the IHB has operated its trains with only 13 specified firemen's assignments. Other firemen having more than 10 years' seniority have continued in the employ of the IHB since 1964, but they will not be replaced when they are retired by normal attrition . . .

4. That the complaint filed before the Commission by the Petitioner seeks a determination that the Indiana Full Crew Law is applicable to the operations of the IHB.

\* \* \*

7. That the Indiana Full Crew Law was enacted to apply to railroad operations within the State of Indiana. Operations conducted over any part of a railroad located outside the State of Indiana are not subject to the Commission. For purposes of the application of the Indiana Full Crew Law, main line track of the Indiana Harbor Belt Railroad located outside the State of Indiana should not be counted in determining the length of the railroads main line track.

8. That segments of track over which the IHB operates trains through and between stations over tracks owned by other railroads, pursuant to trackage rights agreements of the type set forth in Joint Exhibit E, should be counted equally with segments of track over which the IHB operates trains through and between stations and which are either owned or leased by the IHB, for purposes of determining the applicability to the IHB of the Indiana Full Crew Law.

9. That based upon Finding 8, supra, it is not necessary to count separate parallel tracks located between the same termini in order to determine the length of the main line track of the IHB Railroad in the State of Indiana.

10. The Commission further finds that to determine the length of main line track of the IHB in Indiana it is necessary to count the segments of track either owned, leased, or used pursuant to trackage rights agreements between the IHB and other railroads.

11. The Commission finds that the total mileage of main line track owned, leased, and used under trackage rights by the Indiana Harbor Belt Railroad in Indiana is 41.91 miles. See Joint Exhibit No. 1, Page 5, Stipulation 8, Para. A 'Type of Tracks: First Main, Owned: 9.60 miles, Leased: 8.51 miles, Trackage Rights: 23.80 miles.'

12. The Commission therefore finds that the Indiana Harbor Belt Railroad is a common carrier railroad whose main line track is more than 25 miles in length and is subject to the Full Crew Law of Indiana, being Burns Indiana Statutes Annotated, §§ 55-1326 to 55-1338."

The operations and Indiana trackage here stipulated to by the IHB and said George B. Lee are as follows:

"7. *Operations.* All of the IHB's operations are local or switching in character. The IHB's function is to provide switching service for the heavy industrial area it serves, transfer service on traffic between other carriers, and yard terminal switching. It employs regular yard-switcher type locomotives and cabooses and switches standard rolling stock. One hundred forty-eight industrial customers are served in Indiana—principal are: American Can Company, American Maize Products Company, Cities Service Company, E. I. DuPont de Nemours & Co., Inc., Inland Steel Company, Lever Brothers Company, Linde Company, Pullman Standard Company, Sinclair Refining Company, Standard Forgings Company, Standard Oil Company, Swift & Company, Vulcan Detinning Company, and Youngstown Sheet & Tube Company. Its basic method of operation is as follows: handle traffic to and from customers located on the IHB; handle traffic to and from patrons for carriers interchanging business to and from IHB; perform intermediate transfer service between railroad carriers, principally western and eastern carriers; and classify the above-mentioned traffic in the IHB yard at various locations. The IHB operates no passenger trains. Its freight trains sometimes include trains of 70 cars or more.

The easternmost point served by the IHB is a point 2.44 miles west of County Line Road in Indiana. The westernmost point served by the IHB is Franklin Park, Illinois.

8. *Indiana Trackage.*

A. The 1966 report filed by IHB with the Public Service Commission of Indiana with respect to Indiana trackage was as follows:

| | |
|---|---|
| Tracks owned | 41.00 miles |
| Tracks operated under lease | 44.76 miles |
| Trackage operated under trackage rights (also described as rolling stock over foreign lines) | 148.32 miles |

A further breakdown of such trackage for 1966 similar to that contained in the 1961 report filed by the IHB with the Commission is as follows:

| TYPE OF TRACKS | OWNED (miles) | LEASED (miles) | TRACKAGE RIGHTS (miles) |
|---|---|---|---|
| First Main | 9.60 | 8.51 | 23.80 |
| Second Main | –0– | –0– | 14.05 |
| All Other Main Tracks | –0– | –0– | –0– |
| Passing Tracks, Cross-Overs and Turnouts | 23.53 | 18.83 | 105.99 |
| Switching Tracks | 10.87 | 17.42 | 4.48 |
| TOTAL | 41.00 | 44.76 | 148.32 |

The mileage of 'First Main' and 'Second Main' in Indiana listed above includes the total mileage of 'First Main' and 'Second Main' tracks over which the IHB operates or has the right to operate in Indiana regardless of whether the lines upon which they are located are designated or characterized as main lines, branch lines, lateral lines, connecting lines and stub lines serving a limited number of industries.

B. It is hereby stipulated and agreed that certain tracks, such as switching tracks, side tracks, passing tracks, cross-over tracks and turnabouts cannot constitute a part of the IHB's main line track in Indiana within the meaning of the Indiana Full Crew Law. Therefore, the parties agree that in resolving any question of which lines of the IHB in Indiana and the length thereof are to be considered in computing the length of the IHB's main line track, this Commission's consideration should be limited to the following segments of road which are owned, leased or over which the IHB has trackage rights:

1. Segments of Road in Indiana
   Owned by IHB
   Grasselli to State Line
   Grasselli to Cudahy
   Whiting to State Line—
   Illinois State Line

2. Segments of Road in Indiana
   Leased by IHB
   Ivanhoe to a point 2.44
   miles west of County Line Road

3. Segments of Road in Indiana
      Over which the IHB has
      Trackage Rights
   Indiana Harbor to a point 4,000
      feet south of Osborn
   Ivanhoe to State Line via Gibson Yards
   Roby to Illinois State Line (Burnham to Roby)"

Cross-errors have been filed which raised the question as whether or not the Commission can look to trackage of IHB outside the State of Indiana in deciding whether IHB has more than 25 miles of main line track.

The guide for our judicial review in this case was well stated by Judge Arterburn in *Public Service Commission of Indiana* v. *C.I. & L. R.R. Co.*, 235 Ind. 394, 404, 134 N. E. 2d 53, 54 (1956), as follows:

"The purpose of a judicial review of an administrative order by the court is not to decide the matter on the merits for the administrative body but rather solely to determine whether or not the order made by the administrative body was outside the limits and jurisdiction of such body. Once the matter of jurisdiction is determined the court has no further right to interfere with an administrative procedure which belongs to another department of the government— not the judiciary. As a court, we have no right to substitute our judgment on the merits of an issue before an administrative body acting within its jurisdiction."

Our Supreme Court has also upheld the Indiana Full Crew Law in *Public Service Commission of Indiana* v. *New York Central Railroad Co.*, 247 Ind. 411, 216 N. E. 2d 716 (1966). In that our Supreme Court stated at 247 Ind. page 420:

"In arriving at a determination of the issues involved in the case at bar we take cognizance of, and accept at face value, the appellees statements that they have made great technological advancements and that the evidence revealed that these operating changes in railroading were occurring in Indiana all during the period between 1937 and the date suit was filed in the instant case and that these changes are still occurring. We point out however that

these technological advances and the changes made and being made occurred and are occurring by reason of necessity, to meet competition, and we observe that on the whole they have not resulted in any appreciable available increase in service to the public. In some areas and in many ways available services have declined in both quality and quantity, or have been entirely eliminated. In any event the alleged improvements in technology and operating changes cannot here be used to justify a reduction in appellees work force. Such relief, if justified, is properly found in the legislature and not the courts."

The intent of the Legislature in the Full Crew Law as expressed in the title to Acts 1937, ch. 58, states in part:

"An act to promote the safety of employees of and travelers upon railroads by requiring common carriers by railroad to man locomotives, trains, and other self-propelled engines or machines with competent employees; to provide the least number of men that may be employed in the operation of locomotives, trains, and other self-propelled engines or machines; . . . "

It is readily apparent from the plain language of the statute itself that the Legislature clearly intended the Indiana Full Crew Law as a safety measure. This is in accord with *Missouri P.R. Co.* v. *Norwood,* 283 U.S. 249 (1911) and *Brotherhood* v. *Chicago, R.I. & P. R.R. Co.,* 393 U.S. 129 (1968).

Railroad safety statutes generally must be given a liberal construction to effectuate their purposes as safety measures. *U.S.* v. *Seaboard Air Line R.R. Co.,* 361 U.S. 78 (1959).

Burns' Indiana Statutes Annotated, § 55-1331 manifests the specific legislative intent that the Full Crew Law should apply to switching operations.

In this case the Commission obviously possesses the factual expertise in regard to the railroad operations in question. This court will readily admit the total lack of such expertise and indeed the scope of review as stated by Judge Arterburn

in the *Public Service Commission of Indiana* v. *C.I. & L. R.R. Co., supra,* does not contemplate such expertise by this court. All factual inferences are in favor of the decision of the Commission in this regard. The Commission considered the method of operation of IHB as primarily a switching operation and applied the term "main line track" to such operations. It was quite proper for the Commission to look to IHB main line trackage and measure distances between terminals in finding it. It is also quite proper for the Commission to find, in effect, that what is main track by statutory definition § 55-1326 (m) is also main line track when viewed in the context of the specialized operations of IHB.

Appellant IHB also argues that the Commission could not count trackage for which IHB had only a trackage agreement and not a deed or lease. In support of their argument they place particular emphasis on the word "whose" as found in Burns' Indiana Statutes Annotated, § 55-1326 (a). It must be emphasized that the entire thrust of the Indiana Full Crew Law is directed to activity and not property. It is a safety statute which is activity oriented. The trackage right agreements of IHB constitutes entitlement to perform activity which comes within the scope of the Indiana Full Crew Law. In oral argument counsel for IHB conceded that a leased track could qualify as main line tract under Indiana's Full Crew Law. By the same token the tracks subject to trackage agreement would qualify as main line track.

The Commission did not count out-of-state track mileage in determining whether IHB must comply with the Indiana Full Crew Law. In this it was correct. In fact, it would have been erroneous for the Commission to have counted out-of-state track for this purpose. We realize that there is a division of authority on this question. The Supreme Court of Arkansas in *Kansas City Southern Railroad Co.* v. *State,* 116 Ark. 455, 174 S.W. 223 (1915), decided that under the applicable Arkansas Full Crew Law that connecting mileage

of track in an adjoining state should be counted. However, the Supreme Court of Oregon in *Union Pacific Railroad Co. v. Anderson,* 167 Ore. 687, 120 Pac. 2d 578 (1941) held to the contrary and stated:

> "The purpose of the act, as indicated by its title, is to protect the safety of employes and passengers on railroads, and presumptively at least the legislature was thinking about the dangers incident to railroad operations in this and not in adjoining states. We do not take the view urged on us by the plaintiff that here would arise grave doubt of the constitutionality of the law if it were construed as the defendants would have us construe it. It would not for that reason, we think, become extraterritorial legislation. The legislature might constitutionally identify railroads to be regulated in this state by reference to lines of railroad outside this state, and it would not thereby be guilty of extraterritorial legislation. But this is not what the legislature did, and therein lies the difference between this case and the case mainly relied on by the defendants— namely, Kansas City Southern Railway Co. v. State, 116 Ark. 455, 174 S.W. 224. There the statute—also a full crew law—provided that the act should 'not apply to any railroad company * * * operating any line of railroads, whose line or lines are less than 50 miles in length', and the court, construing the statute, held that the classification included mileage outside as well as within the state. This was the natural interpretation of the words of the act. *The statute describes the type of railroad to which it was to apply, and no one could reasonably say that the description does not fit a railroad with fifty or more miles of line, whether or not a portion of that mileage is outside the state.* But here the act makes it 'unlawful for any * * * corporation * * * to operate over its road or any part thereof in excess of fifteen continuous miles * * * any freight train consisting of forty or more cars,' etc. with less than a full crew. *The statute is not made applicable to railroads having in excess of fifteen continuous miles of lines, but in direct terms regulates the operation, which necessarily must be the operation within the state of Oregon.*" (emphasis added)

We believe that the reasoning and result achieved by the Supreme Court of Oregon is preferable. However, it is not necessary to rely solely on the decision of the Supreme Court

or Oregon in deciding this question. The plain language of the Indiana Full Crew Law is limited to operations within the State of Indiana. For example, Acts 1937, Ch. 58, § 8, as found in Burns' Indiana Statutes Annotated, § 55-1333, provides:

"Crews—Self-propelled engine or machine on main track. —It shall be unlawful for any carrier to operate as a locomotive or permit to be operated as a locomotive, on its main track, *in the state of Indiana,* any self-propelled engine or machine not used for the transportation of passengers and/or freight or property for hire, which has sufficient power to draw or propel itself and one [1] or standard railroad cars, unless such engine or machine shall be manned by a crew of competent employees consisting of not less than one [1] engineer, one [1] conductor and one [1] flagman. [Acts 1937, ch. 58, § 8, p. 306.] (our emphasis)

Likewise, § 11 of the same act as found in Burns' Indiana Statutes Annotated, § 55-1336, provides:

"Penalty for violation—Attorney-general—Duties.—Any carrier operating *in the state of Indiana,* who shall wilfully violate any of the provisions of this act [§§ 55-1326—55-1338], shall be liable to the state of Indiana for a penalty of not less than one hundred dollars [$100], nor more than five hundred dollars [$500], for each offense, and such penalty shall be recovered, and suits therefor brought by the attorney-general, or under his direction, in the name of the state of Indiana, on relation of the public service commission of Indiana, in the circuit or superior court of any county through which such railroad may be run or operated. [Acts 1937, ch. 58, § 11, p. 306.] (our emphasis)

This statute must be read and construed as a whole in order to effectuate its purpose. At one point or another all the parties to this case have argued that the Full Crew Law is a safety measure and we agree. Because the safety of Indiana citizens is the only justifiable basis for compliance with the Full Crew Law any operation of trains outside the boundaries of this State are beyond the power of the Indiana General Assembly to legislate upon

and are beyond the regulatory jurisdiction of the Public Service Commission of Indiana. A statute is prima facie operative only as to persons or things within the territorial jurisdiction of the lawmaking power which enacted it. See 50 Am. Jur., *Statutes,* § 487 (1944 ed.). Our conclusion is bolstered by the decision of the Supreme Court of Oregon in the *Anderson* case but is not dependent upon it.

We, therefore, find no error in the decision of the Public Service Commission of Indiana. The same is therefore affirmed.

Lowdermilk, C.J., Hoffman, P.J., Carson and Lybrook, JJ., concur. Sullivan, J. dissents with opinion. White and Pfaff, JJ. not participating.

### DISSENTING OPINION

SULLIVAN, J.—I respectfully dissent from the majority opinion. It relies heavily upon a rehearing opinion in *Public Service Commission* v. *C.I. & L. RR.* (1956), 235 Ind. 403, 134 N. E. 2d 53. The opinion in the latter case upon the merits, however, contains the following statement at page 397:

> "The trial court[1] may not set aside an order of the Public Service Commission if it is supported by substantial evidence *and is not contrary to law.* * * * " (Emphasis supplied)

This statement of law must be considered in understanding the language used by Judge Arterburn in his rehearing opinion wherein he stated that the court has no right to substitute its judgment on the merits of an issue before the Public Service Commission which has acted within its jurisdiction. The *C.I. & L. RR.* case, *supra,* affirms a decision of the trial court upon the ground that since the appellant Public Service Commission did not present to the Supreme Court the evidence which was presented before the Commis-

---

1. Prior to enactment of the Acts of 1957, ch. 189, § 13, being Ind. Annotated Statutes § 54-448 (Burns' 1969 Supp.), appeals were permitted *de novo* to the circuit or superior courts of Marion County.

sion or the evidence presented before the trial court, the Supreme Court had no opportunity to determine whether or not the Commission order was supported by substantial evidence or was contrary to law.

The reluctance of this court to recognize the distinction between "main tracks" and "main *line* tracks" is understandable because the distinction perhaps is difficult to isolate and articulate. Such reluctance, however, does not justify the court's failure to recognize it. The majority has said that it was appropriate for the Commission to equate the "main track" referred to in Ind. Annotated Statutes § 55-1326 (m), (Burns' 1951 Repl.), with the "main line track" covered in the exclusionary provision under Ind. Annotated Statutes § 55-1326 (a), (Burns' 1951 Repl.). Such equation is not so obvious to me as apparently it is to my brethren.

To the contrary, I would point out that a separate statutory provision, i.e., the Utility Tax Act of 1949, being Ind. Annotated Statutes § 64-1810 (1), (Burns' 1961 Repl.), quite clearly recognizes that there is a difference between "main lines" and "main tracks." I cannot convince myself that the legislature at one point intended main lines and main tracks to be synonymous yet in another context to have separate and distinct meanings.

Further, while *Union Pacific R. Co.* v. *Anderson* (1941), 167 Ore. 687, 120 P. 2d 578, relied upon as principal authority by the majority here, does not consciously differentiate between "main line track" and "main track", it does, nevertheless dramatically emphasize that "main line" has a very fixed and distinctive meaning. By unshakeable inference, that case constitutes logical and rational authority which, in my view, requires this court to reject appellee's contention that, as the Commission concluded, "main track" and "main line track" are synonymous. The Oregon Supreme Court there said:

"The commonly understood meaning of the words 'main line' of a railroad is the principal line, and the branches are the feeder lines like the tributaries of a river. The court

so stated in the Oregon, C. & E. case quoting dictionary definitions to that effect. It also quoted from 22 R.C.L. 744 the following: 'A "trunk railway" is a commercial railway connecting towns, cities, counties or other points within the state or in different states, which has the legal capacity, under its charter or the general law, of constructing, purchasing and operating branch lines or feeders connecting with its main stem or trunk, the main or trunk line bearing the same relation to its branches that the trunk of a tree bears to its branches, or the main stream of a river to its tributaries.' " 120 P. 2d 588.

As is made clear in the Oregon decision, such determination is not one of fact as the majority holds here, but is one of law. And it is, I believe, well-established as stated in 2 Am Jur 2d, *Administrative Law*, § 676 that:

"An administrative determination of questions of law is not binding upon a reviewing court. Such a determination is subject to judicial review upon which the court may substitute its own judgment and exercise an independent judgment as to the correctness of the determination * * * "

It is our duty, therefore, to review the legal conclusion drawn, erroneously I believe, by the Commission. Finding No. 6 made by the Commission, not found in the majority's recitation, impliedly controverts the legal conclusion that "main line track" can be here held to include more than the main artery or main trunk trackage. Said Finding is as follows:

"6. That IHB's function is to provide switching service to the industrial area in and around Chicago, Illinois, and Lake County, Indiana, and to transfer cars between other railroad carriers intersecting the segments over which the IHB operates. Exhibit 1, p. 4. The IHB has been able to accomplish this function by formation of an east-west artery or trunk between Franklin Park, Illinois, to Gibson, Indiana, by acquiring trackage rights over segments which it does not own or lease. See Exhibit D. This east-west artery or trunk is intersected by several lines which serve to carry traffic to and from industries and a few railroad carriers not located on the east-west artery or trunk. In some instances the IHB only has trackage rights to oper-

ate over these lines, while other of these lines are owned or leased. See Exhibit C, and Exhibit 1, pp. 6, 14 and 15."

As demonstrated by the Oregon case, *supra*, "main line track" is that track which forms the main artery or trunk of the railroad. The Indiana Public Service Commission in its Finding No. 6 found as a fact that the main artery[2] of the Indiana Harbor Belt Railroad runs from Franklin Park, Illinois to Gibson, Indiana. This track mileage within Indiana is admittedly less than the 41.91 miles of Indiana track which the Commission found to exist as "main line track" for purposes of the Full Crew Law.

As appellant itself admits, however, "in determining what does constitute that main trunk line or artery, a factual determination must be made". As held in *PSCI* v. *C.I.&L RR. Co.*, *supra*, at page 403:

" * * * [A] reviewing court may remand a case to the administrative body for further proceedings in conformity with the law as defined by the judgment and decision of the court. [citations omitted]

"Remanding it to the administrative body gives it an opportunity to correct the irregularities in its proceedings as determined by the court. At the same time it avoids the court's encroachment upon its administrative functions. There is no more reason for assuming that the commission will disregard the law as fixed by this reviewing court than that a lower trial court will do so."

Upon remand the factual determination made by the Commission in its Finding No. 6 could well be deemed erroneous in the light of the guidelines set forth in the Oregon case, *supra*, and as proposed by this dissent.

In its Finding No. 9, the Commission found that "it is not necessary to count separate parallel tracks located between the same termini in order to determine the length of the main line track of the IHB Railroad in the State of

---

2. The findings are silent as to the existence, if any, of a north-south artery or trunk thereby indicating that no such north-south artery exists in the opinion of the Commission.

Indiana". The parties in this regard had stipulated that, as to the main artery referred to in Finding No. 6, the length of trackage in Indiana exclusive of separate parallel tracks, between the Indiana-Illinois State Line and Ivanhoe, which lies east of Gibson, is 5.69 miles. The length of the main artery trackage, being that located between the State Line and Gibson, is therefore necessarily less than 5.69 miles. Further, it is not inconceivable that upon redetermination the Commission might find that a north-south main artery exists. The Commission, therefore, might well find the main artery or arteries of Indiana Harbor Belt Railroad to consist of more trackage or less trackage than exists between the Indiana-Illinois State Line and Gibson, Indiana. In this regard, I wholly agree with the majority that trackage of any description located outside the State of Indiana may not be considered in computing "main line tract" as that term is used in the Full Crew Law. If such factual determinations were made, however, within these guidelines, it would, as Judge Sharp's opinion indicates, be binding upon us. Such determination would necessarily depend upon the nature and extent of operations upon the trackage considered.

For the foregoing reasons, I would reverse the decision of the Commission and remand the cause for rehearing and redetermination.

NOTE.—Reported in 263 N. E. 2d 292.